[Crim. No. 9425.   Second Dist., Div. Three.   Mar. 8, 1965.]

THE PEOPLE, Plaintiff and Respondent, v. STANLEY DUBRIN, Defendant and Appellant.

Hertzberg, Geretz & Leveton, Harrison W. Hertzberg, Ball, Hunt & Hart, Clark Heggeness and Joseph A. Ball for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and S. Clark Moore, Deputy Attorney General, for Plaintiff and Respondent.

NOURSE, J. pro tem.*—Appellant appeals from a conviction of violation of section 487, subdivision 1 of the Penal Code. He contends that the evidence is insufficient to sustain the verdict and judgment.

While the transactions involved are quite complicated there was substantial evidence to establish the following facts: In September 1957 appellant, through his agent Kassab, acquired a certain piece of real property, hereinafter called the Dumetz property, from a man and wife by the name of Garrison. At that time the property was subject to a trust deed for the benefit of the Bank of America securing a note in the principal amount of $14,400 which Kassab, in writing, assumed. As a part of the transaction by which Kassab secured title he executed a note in favor of the Garrisons for $2,250 secured by a purchase money deed of trust. Appellant knew of these transactions. Prior to December 1961 the property became subject to a number of attachments against Kassab and the lien of judgments against Kassab. In December 1961 the Garrisons commenced foreclosure proceedings under the terms of the trust deed given them by Kassab. Appellant, in

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

order to wipe out the attachment and judgment liens against Kassab, induced one Simpson to purchase the Demetz property at the trustee's sale under the second deed of trust with the understanding that appellant would have the option to purchase the property from Simpson in an amount equal to the amount paid by Simpson plus certain sums for his services. Simpson bid in the property at the trustee's sale. In February 1962 appellant, through an agent, entered into an escrow to sell the Dumetz property to one Lathan and the escrow holder demanded that the Bank of America deposit a reconveyance of its first trust deed into escrow. In response to this demand the Bank of America placed its reconveyance with the Title Insurance and Trust Company with instructions to record it when it had received for the benefit of the Bank of America the balance due it on its $14,400 note and deed of trust. This escrow was not consummated but the Title Insurance and Trust Company retained in its possession the above mentioned reconveyance. In June 1962 Simpson executed his note in favor of one McElhose in the sum of $4,500 and executed a deed of trust purporting to secure this note (this was a fictitious transaction inasmuch as while McElhose gave Simpson his check for $4,500 Simpson simultaneously gave McElhose a check for the same amount which was to be held by McElhose). Simpson caused this trust deed to be recorded and ordered from the Title Insurance and Trust Company a loan policy of title insurance. In his instructions to the Title Insurance and Trust Company relative to the policy to be issued in the name of McElhose, Simpson directed that the trust deed signed by him, and which he recorded, be recorded by the title company. Through error the title company recorded the reconveyance of the Bank of America's deed of trust and issued its policy showing the $4,500 deed of trust to be a first lien. Simpson testified that he notified the title company of its error but the officers of the title company, while admitting that Simpson told them they had made an error, stated that he did not specify what the error was. About June 20, 1962, appellant caused to be paid to Simpson the amount of his demand for the monies expended by him in the purchase at the trustee's sale of the Dumetz property and for the services he had rendered. At this time appellant was told of the error by the Title Insurance and Trust Company and signed an instrument by the terms of which he expressly acknowledged that the property was subject to a first trust deed of $14,400.

At this time appellant directed Simpson to execute a deed to Las Vegas General Enterprises, Inc., a corporation controlled by appellant, hereinafter called "Las Vegas." Simpson followed the directions and also caused McElhose to assign the $4,500 note and trust deed to appellant. On June 21, 1962, Las Vegas, at the direction of appellant, entered into an escrow with one Finley through which was to be consummated the sale of the property to Finley for the sum of $22,500. The escrow instructions made no mention of the Bank of America's deed of trust nor did the grant deed placed in the escrow by the seller. The parties to the escrow agreed "that the down payment shall be $3,250.00 the First Trust Deed shall be $16,000.00 and the Seller agrees to accept $3,250.00 Second Trust Deed." Finley arranged a loan of $16,000 from a building and loan company to be secured by a first deed of trust. The building and loan company deposited the net proceeds of this loan into escrow. Finley delivered to appellant's secretary the sum of $3,250 in cash and she gave him her check for a like amount which Finley deposited into escrow together with his note for $3,250 and a deed of trust securing the same. Neither Finley nor the building and loan company was told of and did not know of the Bank of America's deed of trust and the Bank of America was not advised of the escrow. The escrow closed on July 10, 1962, and the escrow delivered to appellant a check payable to Las Vegas for the sum of $18,620.94. Appellant gave the check to his secretary and instructed her to procure a cashier's check for $9,250 payable to Fidelity Bank and Hal Gordon and to deposit the balance to the account of Las Vegas. All the money deposited to the Las Vegas account with the exception of $134.69 was withdrawn within two days.

Title Insurance and Trust Company paid Bank of America the amount then due it on the note of $14,400 which had been executed by the Garrisons and on the 25th day of July, 1962, brought suit against appellant. Appellant employed an attorney, one Murray Chotiner, to represent him in this matter. This attorney contacted the attorneys and officers of the Title Insurance and Trust Company. He was called as a witness on behalf of the appellant and appellant's counsel attempted to elicit from him negotiations and conversations between himself and the agents of the Title Insurance and Trust Company but in so doing stated that appellant was not waiving the attorney-client privilege. Objections to this evidence were sustained on the grounds that the questions asked called for

hearsay and that the testimony sought to be elicited was irrelevant. Appellant while still asserting the privilege then offered to prove by the witness that he had offered on behalf of the appellant the sum of $5,000 in cash and the balance in installments with security for the payment of such installments. Appellant testified that he had employed this attorney and instructed him to make arrangements to repay the funds and that he had never intended to permanently deprive anyone of any money. He further testified that he knew when the escrow closed that he had received a windfall and that until the action was brought against him by the Title Insurance and Trust Company he had made no attempt to return the windfall and that he believed that he was entitled to retain the money for the reason that no one had contacted him during the escrow period and he thought the purpose of the escrow was to give notice to people to make such claims.

We figure it is clear that there was substantial evidence to support the jury's verdict that the appellant was guilty of grand theft.

We do not deem it necessary to determine whether or not the evidence was sufficient to show that the appellant obtained money by false pretenses for there was ample evidence to sustain the finding that he was guilty of embezzlement. At the time he received the check for $18,620.94 from the escrow he knew that he was not entitled to that sum of money but only to the difference between that sum and the amount still due the Bank of America upon its note. He knew that a mistake had been made and that the mistake was due to the fact, which was known to him and not to the escrow holder or the other parties to the escrow, that through mistake the bank's prior lien on the property had, so far as the public records were concerned, been extinguished, with the result that he falsely appeared to be entitled to the net proceeds of the escrow. Where one, through mistake, receives money to which he is not entitled he becomes the trustee of that money for the benefit of the one justly entitled to it. (Civ. Code, § 2224; *Decorative Carpets, Inc.* v. *State Board of Equalization,* 58 Cal.2d 252, 254, 255 [23 Cal.Rptr. 589, 373 P.2d 637]; *People* v. *Tullos,* 57 Cal.App.2d 233, 237, 238 [134 P.2d 280].) The evidence is clear that knowing of the mistake appellant appropriated monies to his own use which rightfully belonged to the Bank of America and which it would have received had the escrow holder been advised of the mistake which resulted

in the reconveyance of the Bank of America's deed of trust. One who fraudulently appropriates property which has been entrusted to him is guilty of a theft. (Pen. Code, § 484.)

Appellant asserts that the trial court erred in sustaining objections to questions asked of Mr. Chotiner relative to negotiations between him as attorney for appellant and the officers of the Title Insurance and Trust Company and to the offer of proof made by appellant as to the facts they intended to prove by the testimony of Mr. Chotiner.

While it is undoubtedly true that evidence of an offer of restitution is relevant to the question as to whether the appellant had a fraudulent intent when he appropriated the funds to his own use (*People* v. *Marsh*, 58 Cal.2d 732, 736 [26 Cal.Rptr. 300, 376 P.2d 300]; *People* v. *Hand*, 127 Cal. App. 484 [16 P.2d 156]; *People* v. *Braver*, 229 Cal.App.2d 303 [40 Cal.Rptr. 142]), we are convinced that, under the circumstances here, the court properly excluded the testimony of Mr. Chotiner.

The question asked of Mr. Chotiner to which objection was sustained was: "Q. All right. Now, pursuant to that, and I do not want you to tell us what was discussed between yourself and the Doctor [appellant] within the attorney-client privilege, did you have any conversation with any of the officials of the Title Insurance & Trust——" To this question the district attorney interposed the objection that the question called for hearsay and for irrelevant testimony. The following conversation then occurred: "THE COURT: You are waiving the privilege, aren't you? MR. HERTZBERG: No, I do not feel I have the right to ask this attorney to waive his privilege, . . . I do not think this constitutes a waiver. As a matter of law I would say it does not. He is going to testify to negotiations he had with the Title Company, what he said, what the officers of the Title Company said. As to what was said between the attorney and his client, as to that sacred privilege, I believe that I would never permit that to be waived." In concluding his offer of proof (which we have heretofore epitomized), counsel for appellant stated: "We further state in the record that we do not feel that we are required to waive the attorney-client privilege for the reason that the privilege does not even go to these statements whatsoever; and, further, that there may be a serious question in my mind at least at this time that if required to waive the privilege to produce this evidence that there may be a denial of the due process."

The testimony of Mr. Chotiner was offered for the purpose

of proving lack of fraudulent intent on the part of the appellant. If the offer of restoration which was set forth in the offer of proof was not an offer which he was authorized by appellant to make, then, clearly, his evidence would have had no relevancy whatsoever to the question of appellant's intent. If, on the other hand, the offer was one which appellant had authorized him to make, then no privilege attached to the communications between appellant and his attorney which had any bearing upon that offer. ▮ A communication made by a client to his attorney, made with the intent that the communication be conveyed to another, is not privileged. (*Solon* v. *Lichtenstein,* 39 Cal.2d 74 [244 P.2d 907]; *Mission Film Corp* v. *Chadwick Pictures Corp.,* 207 Cal. 386, 390 [278 P. 855]; *Estate of Nelson,* 132 Cal. 182, 188 [64 P. 294].)

▮ It is the privilege of the client, not his attorney, to assert that evidence may not be received of a communication between the attorny and client. (*Abbott* v. *Superior Court,* 78 Cal.App.2d 19 [177 P.2d 317]; *Rigolfi* v. *Superior Court,* 215 Cal.App.2d 497 [30 Cal.Rptr. 317].) ▮ If the client calls his attorney as a witness to testify to matters that the attorney could only have learned through the attorney-client relationship he waives the privilege granted by section 1881 of the Code of Civil Procedure. (*Winegar* v. *Gray,* 204 Cal.App.2d 303, 310 [22 Cal.Rptr. 301]; 8 Wigmore on Evidence, §§ 2327-2328), and the witness is subject to cross-examination as to any matters within the scope of the testimony elicited on direct.[1] ▮ From any view of the matter, therefore, it is evident that appellant could not condition his offer of proof upon his not being required to waive a privilege which, if it existed at all, would have been waived by the examination of the witness whose testimony he offered. An offer of testimony upon an invalid condition is not in fact an offer. Appellant was not entitled to have his cake and eat it too. The proferred evidence was therefore irrelevant in that it would not under the conditions subject to which it was offered have tended to prove that at the time of appropriating the money in question appellant did not do so with fraudulent intent.

---

[1]Had the court acquiesced in the receipt of the evidence under these conditions it would have precluded cross-examination to show that in fact Mr. Chotiner had not been authorized to make any offer of restitution or that the appellant did not have the means of carrying out the offer or that the appellant's intent to restore did not exist until he was advised that restoration might prevent prosecution or mitigate punishment. (Pen. Code, §§ 512, 513.)

Appellant requested the court to give an instruction to the effect that evidence of the appellant's offer to return monies appropriated by him might be considered by the jury in determining whether he had a felonious intent and asserts the refusal to give this instruction as error. There was, however, no substantial evidence of any offer of restitution and the court therefore properly refused the instruction.

We have examined the only other claim of error made by appellant and find it without substance.

The judgment is affirmed.

Shinn, P. J., and Kaus, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied May 12, 1965.