[No. F003306. Fifth Dist. June 26, 1984.]

ALPHA BETA COMPANY, Petitioner, v.
THE SUPERIOR COURT OF STANISLAUS COUNTY, Respondent;
DAN CLARK SUNDY, Real Party in Interest.

820

822

---

---

**COUNSEL**

James J. Duryea and David W. Boston for Petitioner.

No appearance for Respondent.

Stockton & Schrimp, Roger M. Schrimp and Karen Tall Sadler for Real Party in Interest.

OPINION

BROWN (G. A.), P. J.—The issue herein is whether the trial court erred in ordering Alpha Beta Company's vice president and general counsel to answer certain deposition questions over Alpha Beta's claim of attorney-client privilege.

Dan Clark Sundy worked for Alpha Beta Company (a corporation) for approximately three and one-half years. After his separation from Alpha Beta he sought employment at Save-Mart Markets. At Save-Mart's request, Sundy signed a form inquiry directed to Alpha Beta, requesting that Alpha Beta supply Save-Mart with information regarding Sundy's employment with Alpha Beta. Alpha Beta's report on Sundy was uncomplimentary of Sundy. Based on this communication, Sundy filed the underlying lawsuit herein for libel against Alpha Beta and Michael Evans, the store manager where Sundy had worked.

Pursuant to Code of Civil Procedure section 446, Alpha Beta's answer to the complaint was verified on information and belief by Alpha Beta's vice president, Delno G. Kanode. That answer denied generally the libel allegations and affirmatively alleged (among other affirmative defenses) that "all the assertions defendants have made about plaintiff are true." The answer to the complaint was actually prepared by outside counsel who had been employed to defend the action by Alpha Beta, Attorney James A. Duryea.

Sundy set the deposition of Kanode. On advice of Attorney Duryea, Kanode refused to answer many of the questions, claiming the attorney-client privilege. ▮▮▮ Sundy argued that the questions did not call for privileged matter, and if they did the privilege had been waived by Kanode's having verified the answer to the complaint.

There was no court reporter present at the hearing on Sundy's subsequent motion to compel Kanode to answer the deposition questions, hence there is no transcript before us of the proceeding on the motion. The court's minute order stated: "Denlo [sic] Kanode is ordered to answer all questions going to his factual basis upon which he signed the verification to the Complaint [sic] and Answers to Interrogatories."

The minute order has been interpreted by the parties as a direction to answer all of the deposition questions certified to the court. The court did not explain whether it found no privilege or that there was a privilege which was waived. Therefore, we must presume in support of the order that the court found no privilege and, if there was a privilege, it was waived.

Sundy submitted no declarations going to the issue of privilege or waiver. Kanode filed a declaration which is not contradicted on the record before us. Kanode's declaration established that he was both vice president and general counsel of Alpha Beta. It continues, "After receipt of the complaint, I had a discussion with ALPHA BETA president Thomas Field regarding the lawsuit. This conversation was confidential and was for the purpose of my providing a legal opinion regarding the merits of the lawsuit. No third persons were present during the discussion." Kanode further stated that he made the legal decisions regarding Alpha Beta's defense immediately after the service of the complaint. The declaration continues: "I did not prepare the verified answer on file in this litigation. The answer was prepared by the Duryea office. Since I was and am a corporate officer as well as an attorney, and since California law permits a corporate officer to verify an answer on information and belief, I verified the defendants' answer on 'information and belief.' The 'information' on which I verified the answer was information told to me by the Duryea office during our conversations and correspondence regarding the merits of plaintiff's lawsuit, or was information I had obtained in my role as an attorney whose legal advice had been sought in connection with ALPHA BETA's defense to the lawsuit.

"I did not intend to waive the attorney/client privilege by signing a verified answer in this case. I know of no legal authority that supports an argument that I waived the privilege by signing a verification of the answer. I signed the verification as a corporate officer because the California Code of Civil Procedure permits such a verification. Nevertheless, my signing as a 'corporate officer' does not alter the fact that any and all information I obtained concerning this litigation was (1) obtained in my capacity as an attorney in the ALPHA BETA law department and was forwarded to the Duryea office along with my recommendations and theories regarding the merits of plaintiff's case and the merit of ALPHA BETA's defense; or (2) information communicated to me by the Duryea office to keep me informed as to the progress of the case, the Duryea office's legal analyses, theories, and recommendations regarding ALPHA BETA's defense."

### DISCUSSION

■ The attorney-client privilege provides for the nondisclosure of confidential communications between a lawyer and his/her client. (Evid. Code, § 954.) The communication must be intended by the client to be treated in confidence. Confidential communications include not only information given from a client to the attorney, but also the legal opinions and advice tendered by the attorney. (Evid. Code, § 952.)

■ Once a party claims the attorney-client privilege, the communication sought to be suppressed is presumed confidential. A party opposing the

privilege has the burden of proof to show the communication is one not made in confidence. (Evid. Code, § 917.) However, the party claiming privilege has the burden to show that the communication sought to be suppressed falls within the terms of the statute. (*D. I. Chadbourne, Inc.* v. *Superior Court* (1964) 60 Cal.2d 723, 729 [36 Cal.Rptr. 468, 388 P.2d 700]; *Tanzola* v. *De Rita* (1955) 45 Cal.2d 1 [285 P.2d 897].) ■ It is also established that a communication which was not privileged to begin with may not be made so by subsequent delivery to the attorney. (*D. I. Chadbourne, Inc.* v. *Superior Court, supra,* 60 Cal.2d 723, 732-733.)

We deal here with the attorney-client privilege as applied in a corporate setting. ■ The corporation is entitled to invoke the privilege. (Evid. Code, § 953, subd. (d).) As stated in the landmark case of *D. I. Chadbourne, Inc.* v. *Superior Court, supra,* 60 Cal.2d 723, 732: "The problem becomes complex because a corporation can speak only through an officer, employee, or some other natural person."

*D. I. Chadbourne, Inc., supra,* set forth in some detail the basic principles to be applied to the determination of whether the attorney-client privilege prevails in a corporate setting. The principles most relevant to the facts before us in this case are: ■ "1. When the employee of a defendant corporation is also a defendant in his own right (or is a person who may be charged with liability), his statement regarding the facts with which he or his employer may be charged, obtained by a representative of the employer and delivered to an attorney who represents (or will represent) either or both of them, is entitled to the attorney-client privilege on the same basis as it would be entitled thereto if the employer-employee relationship did not exist;

■ "2. When such an employee is not a codefendant (or person who may be charged with liability), his communication should not be so privileged unless, under all of the circumstances of the case, he is the natural person to be speaking for the corporation; that is to say, that the privilege will not attach in such case unless the communication constitutes information which emanates from the corporation (as distinct from the nonlitigant employee), and the communicating employee is such a person who would ordinarily be utilized for communication to the corporation's attorney;

■ "3. When an employee has been a witness to matters which require communication to the corporate employer's attorney, and the employee has no connection with those matters other than as a witness, he is an independent witness; and the fact that the employer requires him to make a statement for transmittal to the latter's attorney does not alter his status or make his statement subject to the attorney-client privilege; . . ." (*D. I. Chad-*

bourne, Inc. v. Superior Court, supra, 60 Cal.2d 723, 736-737.) (See also Jefferson, 2 Cal. Evidence Benchbook (2d ed. 1982) § 40.2.) Space does not permit a discussion of all the principles that may affect the determination of the appropriate application of the lawyer-client privilege when a corporation is the client, but we refer the reader to *D. I. Chadbourne, Inc.* v. *Superior Court, supra,* 60 Cal.2d 723, for further elaboration should that be necessary.

To avoid referring to each of the numerous deposition questions seriatim and to simplify the discussion, we will divide the deposition questions into six major categories and restrict our discussion to a representative question or questions from each category. The principles enunciated can easily be applied by the parties in the court below to the balance of the questions in that particular grouping.

■ *Category 1*—Questions relating to Kanode's discussions with Alpha Beta's president, Thomas Field. *Example*: "Q. What discussions did you have with Mr. Field concerning his letter of September 6, 1981 which is Exhibit 4 to his deposition?"

Kanode was corporate general counsel. Field was a high-ranking corporate officer and, as such, was a natural person to speak for the corporation. Kanode's declaration establishes, without contradiction, that the communications were made in confidence for the purpose of mounting a defense to this litigation. The questions patently called for privileged communications, and the trial court erred in ordering Kanode to answer these questions.

■ *Category 2*—Questions relating to Kanode's factual basis for verifying the answer containing certain affirmative defenses. *Example*: "MR. SCHRIMP: What factual basis, not opinion, but what factual basis did you have on January 27, 1982 to sign a verification to an answer to complaint which stated in Paragraph 5 that, quote, all of the assertions defendants have made about plaintiff are true?"

Kanode's declaration establishes the answer to the complaint was prepared by outside counsel Duryea. He states in part: "The 'information' on which I verified the answer was information told to me by the Duryea office during our conversations and correspondence regarding the merits of plaintiff's lawsuit, or was information I had obtained in my role as an attorney whose legal advice had been sought in connection with ALPHA BETA's defense to the lawsuit."

The conversations referred to between Kanode and Duryea are privileged. However, under the principles established in *D. I. Chadbourne, Inc., su-*

*pra,* all of the information that Duryea had and all of the information Kanode had obtained in his role as an attorney was not necessarily privileged. Some of such information may have been obtained from an employee or other witness who "has no connection with [the litigation] other than as a witness . . . ." (See *D. I. Chadbourne, Inc.* v. *Superior Court, supra,* 60 Cal.2d 723, 737.) ▮ A communication which otherwise may be unprivileged does not become privileged by the mere fact it is communicated to an attorney. (See *D. I. Chadbourne, Inc., supra,* at pp. 732-733, and authorities cited therein.)

▮ Kanode's declaration established that the information he possessed came, at least in part, from outside trial counsel Duryea, and to the extent that the information came from that source it was privileged. The declaration further establishes that the answers were prepared by Attorney Duryea. Therefore, in the context of this case and in the form stated, this category of question necessarily calls, in part at least, for information based upon conversations and communications with a privileged source and would lead to the disclosure of privileged information. Duryea, when he objected, had knowledge of the facts. If he had not then claimed the privilege, any objection would have been waived and the privilege lost.

Alpha Beta's counsel, Duryea, attempted, at least at one point, to cause Sundy's counsel to limit the scope of the questions to information other than that which came from Duryea, which Sundy's attorney steadfastly refused to do. From the context, it is quite clear to us that Sundy's attorney was intent upon reaching privileged information.

Accordingly, unless the privilege was waived, we hold the trial court erred in ordering these questions to be answered.

▮ *Category 3*—Questions relating to Kanode's discussion with "anyone" concerning whether defendant Michael Evans was advised of certain company policies. *Example*: "MR. SCHRIMP: Q. Has anybody ever advised you as to whether or not Bob Braley, division manager for Alpha Beta, telephoned Mike Evans and went over the company policy regarding the release of personnel information?"

Much of the discussion under category 2, *supra,* is applicable here. Factual information known to Kanode was, at least in part, based upon communications with privileged sources. Thus, the answer would necessarily lead to discovery of that information. Alpha Beta was entitled to claim the privilege until such time as Sundy's attorney asked the necessary preliminary questions to establish that the answers to the questions he asked would come from a nonprivileged source.

We conclude that unless the privilege was waived, the court erred in ordering these questions answered.

■ *Category 4*—Questions seeking what Kanode "meant" by the various affirmative defenses asserted in the answer to the complaint. *Example*: "MR. SCHRIMP: Mr. Kanode, you state in Paragraph r of the affirmative defenses, 'Insufficient facts have been stated to constitute a cause of action or causes of action against defendants.' What did you mean by that?"

Interpreting these questions to call for information relative to what Kanode personally meant as distinguished from what information on this subject he may have obtained from conversations with privileged sources, the question did not call for privileged information and should have been answered. We note that privilege was the only objection asserted by Alpha Beta's counsel.

■ *Category 5*—Questions relating to whether Alpha Beta had employed investigators to investigate the facts of the case. *Example*: "Q. To you [*sic*] knowledge has any private investigators been conducting interviews or making investigations with respect to the pending trail [*sic*] in this matter."

These questions did not call for privileged information and should have been answered. We note for future guidance that further preliminary questions as to the identity of the investigators would not be privileged.

■ *Category 6*—Questions which do not call for the content of any communication with a privileged source. *Examples*: "MR. SCHRIMP: Q. What is Alpha Beta's policy regarding the release of personnel information?"

"MR. SCHRIMP: Q. Have you ever been advised as to who filled out that document?"

"Did you have any factual information on January 27, 1982 which caused you to believe the allegations of Paragraph 5 of the answer were true."

"Q. When did you first see that document?"

"MR. SCHRIMP: Did you receive a copy of this document from Mr. Gladden?"

"MR. SCHRIMP: Mr. Kanode, did you read Exhibit 2?"

These questions do not call for the disclosure of privileged information. All are preliminary and foundational in nature, and most can be answered by a "yes" or "no" response.

Sundy argues that, assuming certain of the questions may have called for privileged information, the privilege was waived by the corporation as a result of Kanode, as vice president of the corporation, having verified the answer to the complaint on information and belief. (Code Civ. Proc., § 446.) We have found no case discussing this precise issue.

■ A communication subject to the attorney-client privilege is deemed waived when the holder of the privilege, without coercion, discloses a significant part of the confidential communication.[1]

The crucial issue is whether a verification of a pleading on information and belief discloses a significant portion of the communication within the meaning of Evidence Code section 912.

In *De Los Santos* v. *Superior Court* (1980) 27 Cal.3d 677 [166 Cal.Rptr. 172, 613 P.2d 233], the court was presented with the issue of whether the attorney-client privilege was applicable to statements by a minor, made to his mother (and guardian ad litem in the minor's personal injury case) in response to questions the mother asked the minor at the request of their attorney for the purpose of answering interrogatories and preparing for trial. In holding that the statements were privileged, the court rejected the defendant's claim that any privilege was waived due to the mother's verification of the answers to interrogatories. (*Id.,* at p. 685.) "Section 912 of the Evidence Code provides that the privilege is waived with respect to a communication if the holder of the privilege, without coercion, has disclosed a significant part of the communication or has consented to such disclosure by anyone. Defendants confuse the answers given by Jesse to the interrogatories with the conversations between Jesse and Mrs. De Los Santos upon which the answers were based. As we point out above, however, neither by testifying nor by answering interrogatories posed to him does a client waive the confidentiality of conversations with his lawyer leading up to the formulation of those answers." (*De Los Santos* v. *Superior Court, supra,* 27 Cal.3d 677, 685-686.)

---

[1] Evidence Code section 912 provides in pertinent part: "(a) Except as otherwise provided in this section, the right of any person to claim a privilege provided by Section 954 (lawyer-client privilege), . . . is waived with respect to a communication protected by such privilege if any holder of the privilege, without coercion, has disclosed a significant part of the communication or has consented to such disclosure made by anyone. Consent to disclosure is manifested by any statement or other conduct of the holder of the privilege indicating consent to the disclosure, including failure to claim the privilege in any proceeding in which the holder has the legal standing and opportunity to claim the privilege."

In *Travelers Ins. Companies* v. *Superior Court* (1983) 143 Cal.App.3d 436 [191 Cal.Rptr. 871], there was a contention that the holder of the attorney-client privilege had waived the privilege by signing answers to interrogatories. In holding the signing of the answers did not constitute a waiver, the court observed: "The answer turns, of course, on determination of whether Klein's answers were wide enough in scope and deep enough in substance to constitute 'a significant part of the communication.' We think not. His answers, at most, were preliminary and foundational—and quite vague. He did not provide the specifics the interrogatories were doubtless intended to produce. Any really 'significant part of the communication' required by the statute remained unsupplied.

"Applying the test of Wigmore on Evidence as cited in the only useful precedent we have found, *Jones* v. *Superior Court* (1981) 119 Cal.App.3d 534 [174 Cal.Rptr. 148], we conclude that Klein's conduct in his answers did not reach that ' " "certain point of disclosure, [at which] fairness requires that his privilege shall cease whether he intended that result or not.' " [Citation].' (*Id.*, at p. 547.)" (*Id.*, at pp. 444-445.)

2 Jefferson, California Evidence Benchbook (2d ed. 1982) section 35.1, at pages 1307-1308, cites an example, the principle of which has meaning here: "In *People* v. *Gardner* (1980) 106 CA3d 882, 165 CR 415, D, a defendant in custody, wrote a letter to the public defender in which he confessed a murder but cleared X and Y who were also arrested for the murder. D told X that he had written a letter to the public defender that would exonerate X and Y. X then told PO, a police officer, what D had said. PO searched defendant's cell, and seized the letter. At defendant's trial, over his claim of the lawyer-client privilege, the trial judge admitted D's letter. This was held to be reversible error. The People contended that the privilege had been waived by D's disclosure to X. *The Gardner court correctly held that the oral statement of D to X was not a disclosure of the contents of the letter, since it was limited to the fact that D had written a letter exonerating X and Y, but did not include any statement to X that D had confessed his guilt in the letter.*

"*Gardner* stands for the proposition that a disclosure by a client that he has made a communication to his lawyer about a particular subject is not a disclosure of a significant part of the *content* of such communication, which is the disclosure required for a waiver of the privilege under Evid C § 912." (First italics added.)

■  We discern from these authorities that the attorney-client privilege seeks to protect the conversations and communications between the attorney and client, not necessarily the facts developed by those conversations. An-

swering interrogatory questions or even testifying to facts does not necessarily waive the privilege where the conversation and communications between the attorney and client are not revealed. ▮▮ Where, as here, the allegations of the answer to the complaint are vague, conclusional and lack factual depth, signing the answer by the holder of the privilege will not be deemed to be a disclosure of a significant part of the confidential communication within the meaning of Evidence Code section 912 and therefore is not a waiver of the attorney-client privilege.

It follows that Kanode's verification of the answer to the complaint was not a waiver of any privilege which existed. Accordingly, if the trial court based its order to answer the deposition questions upon a finding of waiver, the court erred as a matter of law.

Let a writ of mandate issue directing the trial court to set aside its order directing Kanode to answer the deposition questions contained in categories 1, 2 and 3 delineated herein, and to enter a new order denying Sundy's motion to compel answers to those questions; the petition is otherwise denied. Each party to bear his/its own costs in this court.

Andreen, J., and Hamlin, J., concurred.

A petition for a rehearing was denied July 24, 1984.