[No. E001352. Fourth Dist., Div. Two. Feb. 6, 1985.]

NATIONAL STEEL PRODUCTS COMPANY, Petitioner, v.
THE SUPERIOR COURT OF RIVERSIDE COUNTY, Respondent;
JULES ROSEN, Real Party in Interest.

**COUNSEL**

Paul, Hastings, Janofsky & Walker, Matthew A. Hodel, Sichol & Hicks and William R. Sichol, Jr., for Petitioner.

No appearance for Respondent.

Rodney L. Walker, Maurer, Higginbotham & Harris and J. Michael Higginbotham for Real Party in Interest.

**OPINION**

**MORRIS, J.**—Petitioner, National Steel Products Company, seeks review of an order granting real party in interest, Jules Rosen dba Pantsmaker, discovery of a report prepared by an expert identified as a witness for petitioner in the instant case. Petitioner argues that the report should be non-discoverable because of the attorney-client and work product privileges, and, in the alternative, that the report should be discoverable only to the extent it is relevant.

The expert's report is a technical engineering analysis of a metal building in New York. It was prepared in 1979 to assist counsel in prior New York

litigation in which it was alleged that the building was, among other things, negligently designed, fabricated, and erected by petitioner. Real party in interest was not a party to that litigation. No portion of the report was ever disclosed during the New York litigation. Three pages of the calculations also prepared by the expert were disclosed, one page by court order, two pages voluntarily. The expert was neither deposed nor identified as a trial witness in the New York litigation. The New York litigation was settled prior to trial.

In the instant litigation, real party in interest alleged that petitioner designed, drafted, fabricated and manufactured the components of a metal building in Banning, California, in violation of the American Institute of Steel Construction manual, section 1.10.10 et seq.[1] Petitioner's attorney for the California litigation solicited the expert's New York report from petitioner's counsel for the New York litigation for background purposes. After receiving express authorization from petitioner, New York counsel forwarded the expert's report and calculations. Thereafter, New York counsel was joined as cocounsel for petitioner in the instant litigation.

In addition, petitioner's attorneys commissioned the New York expert to prepare an engineering analysis of the California building. The resulting calculations have been deposed, identified and inspected. The expert's declaration for petitioner states that in preparing his calculations and reaching his opinion regarding the California building, he ". . . did not refer to, refresh [his] recollection from or rely in any manner upon . . ." his 1979 report on the New York building. Petitioner does not intend to offer the New York report as evidence. The expert has been identified as an expert witness in the instant litigation pursuant to Code of Civil Procedure section 2037.

### ATTORNEY-CLIENT PRIVILEGE

Petitioner contends that the expert's prior report is nondiscoverable because it is protected by the attorney-client privilege. We disagree.

If certain prerequisites are met, a client ". . . has a privilege to refuse to disclose, and to prevent another from disclosing, a confidential

---

[1]The parties dispute whether the New York report is relevant to the instant litigation. Although neither this court nor real party in interest have seen the report, we will assume for purposes of discussing the attorney-client and work product privileges below that the report is relevant. We make this assumption because the previous report and the allegations here both involve the design and fabrication of metal buildings by petitioner. Nevertheless, as we also discuss below, to the extent the report upon inspection is found to be irrelevant, this is an independent basis for holding the report to be nondiscoverable.

communication between client and lawyer . . . ." (Evid. Code, § 954; see *City & County of S. F.* v. *Superior Court* (1951) 37 Cal.2d 227 [231 P.2d 26, 25 A.L.R.2d 1418].) ■ The purpose of the attorney-client privilege is important; it encourages the client to make complete disclosure to his attorney of all facts, favorable or unfavorable, without fear that others may be informed. (*Greyhound Corp.* v. *Superior Court* (1961) 56 Cal.2d 355, 396 [15 Cal.Rptr. 90, 364 P.2d 266]; *City & County of S. F.* v. *Superior Court, supra,* at p. 235.) Nevertheless, the privilege is strictly construed because it suppresses relevant facts which may be necessary for a just decision. (*Greyhound Corp.* v. *Superior Court, supra,* at p. 396.)

■ Communication by a client retains its confidential nature, though made to an agent of the attorney, if the disclosure to that agent is reasonably necessary for the transmission of the information to the attorney. (Evid. Code, § 952; Witkin, Cal. Evidence (2d ed. 1966) Communication to Lawyer's Agent, § 806, p. 750.) Here, because the attorney for the New York litigation hired the engineering expert to provide a technical analysis on the petitioner's metal building in New York, it was reasonably necessary for the expert to receive information from the client. (See *City & County of S. F.* v. *Superior Court, supra,* 37 Cal.2d at p. 237.)

Real party in interest contends that the expert's report here related to a material object of the client, the building in New York, and therefore the expert's analysis of that building did not require "confidential communications" from the client. This contention is valid to the extent the expert's analysis of the material object is based entirely on information available to both litigating parties. (*San Diego Professional Assn.* v. *Superior Court* (1962) 58 Cal.2d 194, 201 [23 Cal.Rptr. 384, 373 P.2d 448, 97 A.L.R.2d 761]; *Grand Lake Drive In* v. *Superior Court* (1960) 179 Cal.App.2d 122, 126-127 [3 Cal.Rptr. 621, 86 A.L.R.2d 129].) However, here a declaration submitted by petitioner stated that the expert examined the building *and* ". . . received, evaluated and interpreted technical engineering information and communications originating from [the] client."

■ Although the party asserting the privilege generally has the burden of proof regarding the existence of the privilege (*D. I. Chadbourne, Inc.* v. *Superior Court* (1964) 60 Cal.2d 723, 729 [36 Cal.Rptr. 468, 388 P.2d 700]), the communications sought to be protected are presumed to have been made in confidence (*Alpha Beta Co.* v. *Superior Court* (1984) 157 Cal.App.3d 818, 824-825 [203 Cal.Rptr. 752]; Evid. Code, § 917). Real party in interest fails to overcome this presumption because it submitted no affidavits or declarations stating that the client's communications were not made in confidence.

Real party in interest contends that petitioner waived the attorney-client privilege by expressly authorizing its attorney for the New York litigation to transmit the expert's report on the New York building to its California attorney for the instant litigation.

■ The attorney-client privilege protects the client. (See Evid. Code, § 954.) The client does not waive this privilege by allowing disclosure of confidential communications to a second attorney when reasonably necessary for the accomplishment of the purpose for which the attorney was hired, as is here the case. (See Evid. Code, § 912, subd. (d).)

Real party in interest also contends that by identifying the expert as a witness the petitioner waived the attorney-client privilege.

■ "If the client calls his attorney as a witness to testify to matters that the attorney could only have learned through the attorney-client relationship, he waives the privilege . . . ." (*People* v. *Dubrin* (1965) 232 Cal.App.2d 674, 680 [43 Cal.Rptr. 60]; see *Winegar* v. *Gray* (1962) 204 Cal.App.2d 303, 310 [22 Cal.Rptr. 301].) It follows that the same waiver exists when an *agent* of the attorney is to testify to matters that he could only have learned because of the attorney-client relationship. This is essentially the holding of *Sanders* v. *Superior Court* (1973) 34 Cal.App.3d 270, 280 [109 Cal.Rptr. 970], wherein it was held that the confidential nature of the communication is gone once it is determined that the expert is to be a witness—the client having impliedly, if not actually, consented to the disclosure of the information given to the attorney by way of the expert. (See Evid. Code, § 912, subd. (a).)[2]

Just prior to its holding regarding waiver of the attorney-client privilege, and after a discussion of the work-product privilege, *Sanders* v. *Superior Court, supra,* 34 Cal.App.3d at page 279, held that if the party elects to ". . . call the expert as a witness . . . the opposing party shall be granted a reasonable time thereafter within which to conduct appropriate additional discovery directed at securing the desired information." That this language is not later qualified indicates that it is applicable to both the work product and attorney-client privileges.

---

[2]On its surface *Grand Lake Drive In* v. *Superior Court, supra,* 179 Cal.App.2d at page 128, appears contra to the holding of *Sanders,* stating that communications between a party's attorney and the expert hired by that attorney are not unprivileged because the expert was engaged for the purpose of testifying at trial. The reasoning of the court was that: "To apply this limitation in the normal attorney-client relationship would remove the privilege from all consultations which had to do with preparation of the client to take the witness stand." (*Ibid.*) The narrow context of this dictum, consultation by the attorney to prepare a witness for the witness stand, is here irrelevant. The larger concept of waiver of the attorney-client privilege regarding communications from the client by identifying an attorney's agent/expert as a witness is not considered in the *Grand Lake* opinion. (*Ibid.*)

■ Consistent with *Sanders,* under the Discovery Act "[m]aterial which would not be privileged against disclosure at the trial is not privileged against pretrial discovery." (27 Cal.Jur.3d (1976) Discovery and Depositions, § 12, p. 555, fn. omitted; see *Greyhound Corp.* v. *Superior Court, supra,* 56 Cal.2d at pp. 383-385.) "[F]acts should be liberally construed in favor of discovery, . . ." (*Greyhound Corp.* v. *Superior Court, supra,* at p. 383.) " 'The way is now clear, consistent with recognized privileges, for the parties to obtain the fullest possible knowledge of the issues and facts before trial.' " (*Id.,* at p. 385, quoting *Hickman* v. *Taylor* (1947) 329 U.S. 495, 501 [91 L.Ed. 451, 457, 67 S.Ct. 383].)

■ Accordingly, we hold here applicable the conclusion of *Sanders* that ". . . the information and opinion of an expert respecting the subject matter about which he is a prospective witness are subjects of discovery by interrogation or deposition procedures and, if submitted in a report confined thereto, by production of such a report." (*Sanders* v. *Superior Court, supra,* 34 Cal.App.3d at p. 279.) In a general sense the prior report is an ". . . opinion of an expert respecting the subject matter about which he is a prospective witness . . . ." (*Ibid.*) The expert's testimony, based on observations and confidential communications regarding the California building, will presumably focus on whether petitioner *designed,* drafted, *fabricated* and manufactured the components of that *metal building* in violation of the American Institute of Steel Construction manual, section 1.10.10 et seq. The prior report of this expert of which discovery is sought is about the *design, fabrication* and erection by petitioner of a *metal building* in New York.

In addition, because the expert's prospective testimony will necessarily disclose a "significant part" of the privileged communication to the expert, the privilege is waived with respect to all communications to that expert. (See Evid. Code, § 912, subd. (a).)

## WORK PRODUCT PRIVILEGE

Petitioner also contends that the expert's prior report is protected from discovery because of the work product privilege.

A threshold inquiry is whether New York law on the work product privilege should here apply because the report sought was prepared for prior litigation in New York. Real party in interest contends that New York case law holds that the attorney's work product privilege does not extend to subsequent litigation, and that New York law should be applied.

■ Assuming arguendo that New York law does not extend the work product privilege to subsequent litigation, we hold that California law

should be applied in this case. (See *Fellows* v. *Superior Court* (1980) 108 Cal.App.3d 55, 63 [166 Cal.Rptr. 274].) ▮ "Questions of choice of law are determined in California . . . by the 'governmental interest analysis' rather than by the . . . 'most significant contacts theory.' . . . [U]nder the governmental interest analysis approach, the forum in a conflicts situation 'must search to find the proper law to apply based upon the interests of the litigants and the involved states.' " (*Offshore Rental Co.* v. *Continental Oil Co.* (1978) 22 Cal.3d 157, 161 [148 Cal.Rptr. 867, 583 P.2d 721]; see *Reich* v. *Purcell* (1967) 67 Cal.2d 551, 553 [63 Cal.Rptr. 31, 432 P.2d 727].) Further, under the governmental interest analysis " '[w]hen one of two states related to a case has a legitimate interest in the application of its law and policy and the other has none, there is no real problem; clearly the law of the interested state should be applied.' " (*Hurtado* v. *Superior Court* (1974) 11 Cal.3d 574, 580 [114 Cal.Rptr. 106, 522 P.2d 666], quoting Currie, Selected Essays on The Conflict of Laws (1963) p. 189, fn. omitted; see *Offshore Rental Co.* v. *Continental Oil Co., supra,* at p. 163.)

▮ Here California has a legitimate interest in the application of its law and policy, and New York has little or none. "It is the policy of [California (i) to preserve the rights of attorneys to prepare cases for trial with that degree of privacy necessary to encourage them to prepare their cases thoroughly and to investigate not only the favorable but the unfavorable aspects of such cases and (ii) to prevent an attorney from taking undue advantage of his adversary's industry or efforts." (Code Civ. Proc., § 2016, subd. (g).) In *Fellows* v. *Superior Court, supra,* 108 Cal.App.3d at page 63, these concerns were held to have equal validity to subsequent litigation. Moreover, requiring California courts to determine the exact nature of New York law on this issue would be impractical and burdensome.

In contrast, whatever the policy interests of the New York rule, they have little or no import as applied to this California lawsuit. The building that is the subject of this lawsuit is located in California and petitioner is a Texas corporation with its principal place of business in Texas. Moreover, California law will apply to all substantive issues in this case. Based on these facts, and the narrow context of the conflicts dispute, forum shopping is not a legitimate concern of New York. (See *Reich* v. *Purcell, supra,* 67 Cal.2d at pp. 555-556.) Consequently, the interest New York has is purely local and unsubstantial. (See *id.,* at p. 556.) New York can still apply its rule to subsequent litigation in New York.

Real party in interest's contention that New York law regarding the work product privilege for subsequent litigation should apply fails the California governmental interest test. Therefore, the work product discussion below will be based on California law.

The California definition of work product is here satisfied. ■ Within the meaning of work product is "[m]aterial of a derivative or interpretive nature obtained or produced in preparation for trial. Such material includes . . . findings, opinions, or reports of experts." (2 Jefferson, Cal. Evid. Benchbook (2d ed. 1982) § 41.1, p. 1473; see *Williamson* v. *Superior Court* (1978) 21 Cal.3d 829, 834 [148 Cal.Rptr. 39, 582 P.2d 126]; *Mack* v. *Superior Court* (1968) 259 Cal.App.2d 7, 10 [66 Cal.Rptr. 280].) In the instant case, the report originally had been prepared for prior litigation involving petitioner, and counsel for petitioner in this litigation obtained the report as background material in preparation for trial.

■ The work product privilege is conditional as it relates to the expert's report; therefore, ". . . good cause normally must be shown to compel discovery of expert opinions in advance of trial, . . ." (*Williamson* v. *Superior Court, supra,* 21 Cal.3d at p. 835.) More specifically, "[t]he work product of an attorney shall not be discoverable unless the court determines that denial of discovery will unfairly prejudice the party seeking discovery in preparing his claim or defense or will result in an injustice, and any writing that reflects an attorney's impressions, conclusions, opinions, or legal research or theories shall not be discoverable under any circumstances." (Code Civ. Proc., § 2016, subd. (b).)

Code of Civil Procedure section 2016, subdivision (b) strikes a balance between the conflicting purposes of the work product privilege and modern discovery rules. On one hand, the work product privilege exists to encourage attorneys to prepare their cases thoroughly and to investigate favorable as well as unfavorable aspects of such cases, and to prevent an attorney from taking undue advantage of his adversary's efforts. (Code Civ. Proc., § 2016, subd. (g); see *Hickman* v. *Taylor, supra,* 329 U.S. at p. 511 [91 L.Ed. at p. 462]; *Sanders* v. *Superior Court, supra,* 34 Cal.App.3d at pp. 275-276.) On the other hand, the liberal discovery rules of today are meant to ". . . make a trial less a game of blind man's buff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent." (*United States* v. *Proctor & Gamble* (1958) 356 U.S. 677, 682 [2 L.Ed.2d 1077, 1082, 78 S.Ct. 983]; see *Greyhound Corp.* v. *Superior Court, supra,* 56 Cal.2d at p. 376.)

In balancing the work product privilege against discovery, " '[t]he rule predicated on fairness articulated in the decisions is a shield to prevent a litigant from taking undue advantage of his adversary's industry and effort, not a sword to be used to thwart justice or to defeat the salut[a]ry objects of the Discovery Act.' " (*Williamson* v. *Superior Court, supra,* 21 Cal.3d at p. 838, quoting *Petterson* v. *Superior Court* (1974) 39 Cal.App.3d 267, 273 [114 Cal.Rptr. 20].) Accordingly, privilege statutes generally are nar-

rowly construed, while discovery statutes are liberally construed. (*Greyhound Corp.* v. *Superior Court, supra,* 56 Cal.2d at pp. 377, 396; *Sullivan* v. *Superior Court* (1972) 29 Cal.App.3d 64, 72 [105 Cal.Rptr. 241].)

Real party in interest contends that good cause to discover the expert's report exists because the expert was identified as an expert witness.

■ Generally, good cause includes a showing that the expert may be called as a witness. (*Williamson* v. *Superior Court, supra,* 21 Cal.3d at p. 835; see *Sanders* v. *Superior Court, supra,* 34 Cal.App.3d at p. 279.) As stated in *Swartzman* v. *Superior Court* (1964) 231 Cal.App.2d 195, 203 [41 Cal.Rptr. 721], "[w]hen it becomes reasonably certain an expert will give his professional opinion as a witness on a material matter in dispute, then his opinion has become a factor in the cause. At that point the expert has ceased to be merely a consultant and has become a counter in the litigation, one to be evaluated along with others. Such evaluation properly includes appropriate pretrial discovery." (Quoted in *Williamson* v. *Superior Court, supra,* at pp. 834-835.)

Here the expert of whose report discovery is sought was identified as an expert witness pursuant to Code of Civil Procedure section 2037, subdivision (a). "[F]or each expert witness identified, all discoverable reports and writings concerning each expert witness's proposed testimony and preparations to testify shall be produced according to the provisions of this article." (Code Civ. Proc., § 2037.3.) As discussed in the context of the attorney-client privilege above, in a general sense, on its surface, the New York report concerns the expert witness' proposed testimony. (See Code Civ. Proc., § 2037.3; *Review of Selected 1982 California Legislation* (1983) 14 Pacific L.J. 357, 465.) The expert's previous report on the New York building may either support or impeach the expert's new conclusions regarding the California building.

■ Not all work the potential expert witness has performed for counsel, however, is properly the subject of appropriate pretrial discovery. (See *Swartzman* v. *Superior Court, supra,* 231 Cal.App.2d at pp. 203-204.) In *Scotsman Mfg. Co.* v. *Superior Court* (1966) 242 Cal.App.2d 527, 531 [51 Cal.Rptr. 511], the product of the expert's services rendered in an advisory capacity was held not removed from the work product limitation upon attempted discovery merely because the expert was a prospective expert witness.

More fully, the court in *Scotsman Mfg. Co.* v. *Superior Court* stated that: "[I]f and when the expert becomes a potential witness on behalf of the client the product of his employment is subject to discovery. However, the mere

fact the expert may have the dual status of a prospective witness and of adviser to the attorney, does not remove the product of his services rendered exclusively in an advisory capacity, as distinguished from the product of services which qualify him as an expert witness, from the work product limitation upon discovery. Under the ruling in *Swartzman,* the information and opinion of the expert respecting the subject matter about which he is a prospective witness are subjects of discovery by interrogation or deposition procedures and, if submitted in a report confined thereto, by production of such a report. . . . However, wherever the report may include the information and opinions of the expert given to the attorney not only in his capacity as a prospective witness but also as an adviser in the preparation of the client's defense, it is subject to the work product limitation prescribed by statute." (*Ibid.*)

The critical distinction in the rule enunciated by *Scotsman* is that between services rendered in an advisory capacity and services which qualify one as an expert witness. (See *ibid.*) Nevertheless, so far as we can determine, California courts heretofore have not expressly elaborated on this aspect of *Scotsman.* We believe some elucidation would be beneficial.

We hold that an expert's report rendered in an advisory capacity is one designed to assist the attorney in such matters as preparation of pleadings, the manner of presentation of proof, and cross-examination of opposing expert witnesses; matters that are often reflective of the mental processes of the attorney under whose direction the expert works. (See *State* v. *Circuit Court for Milwaukee County* (1967) 34 Wis.2d 559 [150 N.W.2d 387, 408, 35 A.L.R.3d 377].) In contrast, we hold that a report which would qualify the author as an expert witness is one containing findings and opinions of the expert that go to the establishment or denial of a principal fact in issue. (See *ibid.*; but see Kennedy, Cal. Expert Witness Guide (1983) § 6.4, pp. 139-141.)

Applying the above analysis, it will often be necessary for the trial judge to conduct a three-step *in camera* inspection of the report of an expert identified as a witness in order to rule on the claim of the attorney's work product privilege. (Cf. *Fellows* v. *Superior Court, supra,* 108 Cal.App.3d at p. 68.)

First the judge should determine if the report, in whole or part, ". . . reflects an attorney's impressions, conclusions, opinions, or legal research or theories . . . ." (Code Civ. Proc., § 2016, subd. (b).) The work product that this definition represents is absolutely privileged; it cannot be discovered under any circumstances. (*Ibid.*) The judge need go no further in his

analysis unless all or easily severable portions of the report do not so reflect the thoughts of an attorney.

Steps two and three of the *in camera* inspection are applicable only to those portions of the report that are not absolutely privileged. In step two the trial judge should determine whether the report, in whole or part, is advisory or not pursuant to the above elaboration of *Scotsman.* The portions of the report that are advisory are protected by the conditional work product privilege; the portions that are not advisory are discoverable if easily severable.

Finally, in step three, which is applicable only to advisory portions of the report that are not absolutely privileged, if any, the judge should determine whether other good cause for discovery outweighs the principles supporting the conditional work product privilege. (See *Petterson* v. *Superior Court, supra,* 39 Cal.App.3d at p. 272; *Scotsman Mfg. Co.* v. *Superior Court, supra,* 242 Cal.App.2d at p. 530.) ▉ As stated in *Petterson* v. *Superior Court, supra,* at page 272, ". . . if an expert is retained by an attorney only for the purpose of advising or assisting counsel to prepare his case, the expert's observations and opinions ordinarily are irrelevant, and . . . may not be [discovered] by the adversary party unless there is some other compelling reason for [discovery]."[3]

Real party in interest contends another compelling reason exists to obtain the engineering report of petitioner's expert witness even though it was originally prepared for prior litigation, in that the prior report may impeach the expert witness' new findings and testimony. In this regard there is also no comparable substitute for the prior report.

These factors, if supported by an *in camera* inspection of the report, are in combination sufficiently significant to be weighed against the work product privilege. ▉ To begin with, the need for pretrial discovery to prepare for cross-examination and rebuttal of an expert witness is the same or greater than it is with a lay witness. (*Kennemur* v. *State of California* (1982) 133 Cal.App.3d 907, 916-917 [184 Cal.Rptr. 393].) Accordingly, an expert witness may be cross-examined regarding any scientific, technical, or professional publication if: "(1) The witness referred to, considered, or

---

[3]It might be argued that when an expert is reasonably certain to be a witness, *Scotsman* limits discovery to ". . . the product of services which qualify him as an expert witness . . .," regardless of whether other good cause for discovery exists. (See *Scotsman Mfg. Co.* v. *Superior Court, supra,* 242 Cal.App.2d at p. 531.) Such an argument, however, would be unrealistic. "In the infinite variety of circumstances which may arise in the course of human activity, as revealed in the complexities of litigation, many other factors may, collectively or individually, justify inquiry into the acts and thoughts of the independent expert." (*Grand Lake Drive In* v. *Superior Court, supra,* 179 Cal.App.2d at p. 131.)

relied upon such publication in arriving at or forming his opinion; or, (2) Such publication has been admitted in evidence." (Evid. Code, § 721, subd. (b).)

By declaration for petitioner the expert states that he did not refer to or rely on his prior report in preparing for the instant litigation. Nevertheless, ". . . it is important to permit an expert witness to be cross-examined concerning those publications referred to or *considered* by him even though not specifically relied on by him in forming his opinion. An expert's reasons for not relying on particular publications that were referred to or considered by him while forming his opinion may reveal important information bearing upon the credibility of his testimony." (Law Revision Com. com., Deering's Ann. Evid. Code (1966 ed.) § 721, p. 533, italics added.) Here it is reasonable to infer that the expert considered his prior engineering report in his preparations for trial. This is because the expert's prior report and current preparations had much in common; both were completed to help defend against civil lawsuits that concerned petitioner's design and fabrication of metal buildings. Moreover, the prior report was compiled within five years of the expert's instant preparations for trial.

Determining whether "'. . . denial of discovery will unfairly prejudice the party seeking discovery in preparing his claim or defense or will result in an injustice . . .' [Code Civ. Proc., § 2016, subd. (b)] . . . requires that a court weigh carefully the power of impeachment as a valuable tool in the process of truth ascertainment against the benefits of protecting the privilege of 'work product'" (*Jasper Construction, Inc.* v. *Foothill Junior College Dist.* (1979) 91 Cal.App.3d 1, 17 [153 Cal.Rptr. 767]; see *Brown* v. *Superior Court* (1963) 218 Cal.App.2d 430, 443 [32 Cal.Rptr. 527]).

Another compelling reason for permitting discovery is the inability to obtain an adequate substitute for that which is sought by discovery. In *Petterson* v. *Superior Court, supra,* 39 Cal.App.3d at page 272, the court stated that "[i]t would be unthinkable to adopt a rule which, for example, would prohibit a litigant from taking the deposition of an expert who has examined or tested a relevant object even though the object is no longer available or the testing so altered the object tested that the adversary party cannot make like tests, merely because the party who retained the expert has elected not to call him as a witness. It is patent that such a rule would not be consonant with ordinary principles of fairness or the interests of justice." (See *Grand Lake Drive In* v. *Superior Court, supra,* 179 Cal.App.2d at p. 127.) The situation in the instant case is similar to that discussed in *Petterson*. Real party in interest has no adequate substitute for the report it seeks, because the potential impeachment value of the report

lies in the fact that it was prepared by the expert identified as a witness for petitioner, and may include inconsistent prior statements of that witness.

Therefore, in step three of the judge's *in camera* inspection of the expert's report, the impeachment value and uniqueness of the portions of the report remaining for evaluation after steps one and two should be weighed against the protections of the conditional work product privilege.

## RELEVANCE

Petitioner contends that even if the attorney-client and work product privileges are inapplicable, the trial judge should order the prior New York report to be produced only to the extent relevant to the issues raised in the instant litigation. Further, petitioner contends that because real party in interest ". . . in its interrogatory responses had alleged simply that the Banning building violated only a specific provision of the American Institute of Steel Construction's Manual of Steel Construction AISC, Section 1.10.10," the report and calculations should be produced only to the extent they concern this specific provision. We agree that on remand the trial judge should evaluate the relevance of the New York report, but find the application of this concept suggested by petitioner to be erroneous. Petitioner misreads the interrogatory response of the real party in interest. Real party in interest's response did not allege that only section 1.10.10 of the American Institute of Steel Construction (AISC) manual was violated, but rather that AISC manual section 1.10.10 et seq. were violated. Moreover, it appears from answers to other interrogatories that real party in interest is still awaiting information; such information might lead to further specific allegations.

With these facts in mind, we turn to a brief analysis of the scope of discovery permitted by law for consideration by the trial judge when he conducts the *in camera* inspection of the New York report on remand.

██ The trial court has broad discretion in ruling on discovery, and will only be overturned for an abuse of discretion. (*Perkins* v. *Superior Court* (1981) 118 Cal.App.3d 761, 765 [173 Cal.Rptr. 596].) ██ "[D]iscovery of all relevant material during the time of preparation is the aim of the [Discovery Act]. . . ." (*Greyhound Corp.* v. *Superior Court, supra,* 56 Cal.2d 355, 384.) Relevancy is a broader concept than relevancy to the issues, the standard is relevancy to the subject matter, which is determined by potential, not actual, issues in the case. (*City of Los Angeles* v. *Superior Court* (1973) 33 Cal.App.3d 778, 782 [109 Cal.Rptr. 365].) Further, discovery of unprivileged information should generally be permitted if it ". . . appears reasonably calculated to lead to the discovery of

admissible evidence." (Code Civ. Proc., § 2016, subd. (b); see Code Civ. Proc., § 2031, subd. (a).) In accordance with the liberal policies underlying the discovery procedures, doubts as to relevance should be resolved in favor of permitting discovery. (*Valley Bank of Nevada* v. *Superior Court* (1975) 15 Cal.3d 652, 656 [125 Cal.Rptr. 553, 542 P.2d 977].)

## DISPOSITION

IT IS ORDERED that a peremptory writ of mandate issue commanding the Riverside Superior Court to set aside its order granting unlimited discovery of the report and to conduct an *in camera* inspection of the expert's report to determine, consistent with this opinion, (1) the extent to which the report is protected by the work product privilege, and (2) whether the report is relevant. The Riverside Superior Court shall allow discovery of the report to the extent that it is both unprotected and relevant.

McDaniel, J., and Rickles, J., concurred.