[No. B135321. Second Dist., Div. Three. Mar. 23, 2000.]

FIRST STATE INSURANCE COMPANY et al., Petitioners, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
JALISCO CORPORATION, INC., et al., Real Parties in Interest.

**COUNSEL**

Smith, Brennan & Dickerson, Philip E. Smith, Joseph G. Harraka, Jr., and David G. Hagopian for Petitioner First State Insurance Company.

Morris, Polich & Purdy, Beth A. Kahn and Richard H. Nakamura, Jr., for Petitioner Employers Mutual Casualty Company.

Wilson, Elser, Moskowitz, Edelman & Dicker, Robert M. Anderson, Robert L. Joyce and Michael J. Case for Petitioners Royal Insurance Company of America and Globe Indemnity Company.

Baker, Keener & Nahra and Steven T. Adams for Petitioner Seaton Insurance Company, formerly known as Unigard Security Insurance Company.

Musick, Peeler & Garrett, Susan J. Field and Steven J. Elie for Petitioner American Re-Insurance Company.

Haight, Brown & Bonesteel, Jules S. Zeman, Richard E. Wirick and Christopher Kendrick for Petitioner Highlands Insurance Company.

Walsh & Furcolo, Timothy M. Twomey and Esther J. Lee for Petitioner Interstate Fire and Casualty Company.

Lloyd W. Pellman, County Counsel, and Gordon W. Trask, Principal Deputy County Counsel, for Respondent.

Zevnik, Horton, Guibord, McGovern, Palmer & Fognani, Paul Anton Zevnik, Steven E. Knott, Elizabeth M. Miller and Mark B. Hartzler for Real Parties in Interest.

## OPINION

## SCHNEIDER, J.*—

### INTRODUCTION

Petitioner First State Insurance Company, joined by a number of other insurance companies,[1] seeks an order from this court requiring respondent court to vacate an order made in the case of *Jalisco Corp. v. Argonaut Ins. Co.* (Super. Ct. L.A. Co., No. BC158441) now pending in respondent court. Specifically, petitioner seeks to nullify the court's order precluding any party

---

*Judge of the Los Angeles Superior Court, Assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

[1]Joinders have been filed by Employers Mutual Casualty Company, Interstate Fire and Casualty Company, Highlands Insurance Company, First State Insurance Company, American Re-Insurance Company, Globe Indemnity Company, Royal Insurance Company of America, Seaton Insurance Company (formerly known as Unigard Security Insurance Company), American Home Assurance Company, Granite State Insurance Company, Lexington Insurance Company, and National Union Fire Insurance Company of Pittsburgh, PA. All the parties joining in the petition shall hereinafter be referred to as "petitioner."

from filing a dispositive motion pursuant to Code of Civil Procedure section 437c[2] (the summary judgment statute) without first complying with the supplemental case management order (SCMO) issued by the court on July 23, 1999.

## FACTUAL BACKGROUND

The action pending in respondent court (the Action) readily qualifies as complex litigation. In fact, it was so designated by respondent court no later than April 17, 1998. In the Action, 25 corporate entity plaintiffs (real parties in interest herein)[3] seek insurance coverage from in excess of 40 insurance companies for property damage and bodily injury claims involving approximately 1,800 sites owned or operated by Jalisco throughout the United States, Canada and Puerto Rico. The operative fifth amended complaint consists of 52 causes of action described in 411 paragraphs in 98 pages of text. Including exhibits, the fifth amended complaint comprises a total of 467 pages.

. In order to resolve dispositive motions relating to the Action, respondent court will be required to determine which, if any, of one or more insurance policies issued by one or more of the insurance company defendants covers the various claims made regarding the 1,800 sites referred to above. Apparently, the Action is made even more complex by reason of various reorganizations that have occurred with respect to the corporate entities on both sides of the case. As stated in respondent court's return: "Any claim may present several alternatives as to the appropriate jurisdiction's law to be applied to the issue of coverage. In the case of an insurance contract, the law to be applied is usually that of the place the contract is to be performed. (Civil Code Section 1646.) This may be [*sic*] site of the insured risk, but depending on the facts surrounding each insurance policy, the place the contract was entered into, or serviced, or the intent of the parties might indicate some other jurisdiction's law would be the appropriate choice."[4]

To reiterate, before respondent court will be able to decide any dispositive motions in the Action, it is clear it will first be required to determine which jurisdiction's law will be applied to the issues raised in the motions.

---

[2]All statutory references are to the Code of Civil Procedure.

[3]Real parties in interest shall hereinafter be called "Jalisco," since that corporation is the lead plaintiff in the Action.

[4]As respondent court observes: "If the trial court determines that the law of a Canadian province or a state other than California is controlling, it must then educate itself on an unfamiliar and not easily researched body of law. Determining which jurisdiction's law to apply is a mixed question of law and fact, which may have to be repeated hundreds of times by the trial court in order to resolve all of the potential permutations presented by the coverage issues in this case."

## The Supplemental Case Management Order

On March 9, 1999, two insurance companies (Royal Insurance Company of America and Globe Indemnity Company) filed a motion for summary adjudication relating to claims being advanced by Jalisco with respect to one of the sites involved in the Action.[5] On May 7, 1999, when these motions came on for hearing, the trial court, after expressing the view that the case was "overwhelming to a fast track court" and that "[h]aving these kinds of complex cases is a very difficult thing," solicited the views of counsel concerning the manner in which the case should proceed.

Thereafter, a series of status conferences were held by the court during which the subject of how to schedule and manage dispositive motions was discussed. On June 29, 1999, the court issued its proposed SCMO. On July 23, 1999, without deciding the above referred to summary adjudication motion, over petitioner's objections[6] and after hearing, the court adopted the proposed SCMO.[7] The SCMO provided in pertinent part:

"Any party seeking to file a motion for summary judgment/ adjudication must first file a notice of intent with the court. The notice shall set forth the (a) parties to the proposed motion, (b) the specific order sought and the causes of action implicated, (c) the moving party's choice of law. A copy of the operative pleading with the implicated allegations and causes of action

---

[5]This motion, which consists of 346 pages, was the second dispositive motion filed by the time the court issued its SCMO. An earlier motion had been resolved by a settlement. According to respondent court, the motion papers, opposition and exhibits measured more than two feet in height.

[6]Petitioner objected to the court's proposed SCMO on a number of different grounds. In its petition, petitioner summarizes these objections as follows: "First, under the apparent terms of the Proposed Supplemental CMO, the Court could not hear dispositive motions before the then-existing November 9, 1999 trial date, since the Proposed Supplemental CMO required at least 115 days between the filing of the notice of intent and the hearing on the dispositive motion. Second, the time requirements set forth in the Proposed Supplemental CMO contravened Petitioners' right to file dispositive motions pursuant to the time requirements specified in section 437c. Third, the Proposed Supplemental CMO was fundamentally unclear at several critical points, and the Respondent Court needed to modify it in several respects in order for it to provide any meaningful guidance to the parties in this Action. Fourth, the Proposed Supplemental CMO created a multi-step process for briefing and hearing dispositive motions, thereby increasing, rather than lessening, the burden of dispositive motion practice upon the Respondent Court. Fifth, the Proposed Supplemental CMO imposed procedures that improperly interfered with Petitioners' absolute rights to file dispositive motions under section 437c." In this writ proceeding, petitioner appears to be advancing only the first, second and fifth objections raised by it in the trial court. Jalisco did not oppose the court's proposed SCMO. Petitioner also proposed an alternative method of managing dispositive motions, while at the same time preserving its purported unfettered right to file such motions.

[7]The SCMO was issued after "the parties estimated that as many as 40 summary judgment motions with as many as 105 separate statements would be required to resolve the case."

highlighted shall be attached. Any objection and request for hearing to the noticed choice of law must be filed within ten days of said notice. . . .

"Within forty-five days of the above hearing, or if no hearing, within forty-five days of the filing of the above notice, the parties shall meet, confer and file:

"(A) A list of all legal issues involved in the motion together with rules of law that the parties agree apply to each issue; and

"(B) If the parties cannot agree to the applicable law as to every legal issue, the parties shall prepare points and authorities that support or oppose the application of the contested rule of law to the issue in question. The court will schedule a hearing without further briefing. . . .

"All briefs shall cite to the law as discussed in item 2 above. The parties must meet and confer regarding separate statements. They shall file a joint separate statement as to all facts that are agreed upon. If more than one party is opposing, more than one joint separate statement may be required. However, the court prefers for all parties to submit a single joint separate statement, if possible. No evidence need be cited or attached with respect to the agreed upon facts. The parties shall file individual separate statements regarding disputed facts. . . ."

The gravamen of petitioner's claim in this proceeding is that respondent court exceeded its jurisdiction by issuing the SCMO because that order placed impermissible conditions on a party's unfettered right to file a dispositive motion, such as a motion for summary judgment or summary adjudication. Because of the importance of the issue presented in the petition, we requested an opposition from Jalisco and set the matter for hearing. Both Jalisco and respondent court have filed returns to the petition. Petitioner has filed a reply to the returns. As the court understands it, at this time the trial of this case has been continued to August 23, 2000.

DISCUSSION

As noted above, petitioner contends respondent court exceeded its jurisdiction by issuing the SCMO because the order contravenes the provisions of section 437c which, according to petitioner, give it the right to file a motion for summary judgment or summary adjudication at any time and in a manner consistent with the provisions of section 437c. Specifically, petitioner asserts that the SCMO is invalid because: "It requires that, before Petitioners may file dispositive motions, they must first: (1) file a notice of

intent specifying the issues, causes of action implicated, and choice of law; (2) attend a hearing on the noticed choice of law; (3) meet and confer with Real Parties regarding a list of legal issues and rules of law; (4) file a joint statement of uncontested legal issues and rules of law with Real Parties; (5) file a memorandum of points and authorities regarding disputed legal issues and rules of law; and (6) attend a hearing on the contested legal issues and rules of law. [Fn. omitted.] In addition, the Supplemental CMO also requires Petitioners and Real Parties to file a *joint* statement of facts."

Jalisco, on the other hand, contends that the SCMO "does not prevent petitioners from filing dispositive motions" and "does not conflict with any procedure set out in the summary judgment statute." Jalisco argues the SCMO "imposes procedures that supplement rather than conflict with Section 437c." These arguments are difficult to accept. The SCMO sets up a procedure for resolving the choice of law issues involved in dispositive motions before the motions themselves may be filed. It would appear, therefore, that the SCMO does preclude a party from filing a motion pursuant to section 437c until the choice of law issues are resolved.

Section 437c authorizes a party to file a motion for summary judgment or summary adjudication "at any time after 60 days have elapsed since the general appearance in the action or proceeding of each party against whom the motion is directed . . . ." Since the SCMO precluded a party from filing a motion pursuant to the quoted language of section 437c, we agree with petitioner that that order contravenes the plain language of the section and, therefore, was to that extent invalid. (See, e.g., *Asbestos Claims Facility v. Berry & Berry* (1990) 219 Cal.App.3d 9, 19 [267 Cal.Rptr. 896][8] [holding that it is impermissible for a court to establish a procedure that is inconsistent with a procedure specified in a statute or by rules adopted by the Judicial Council]; *Kalivas v. Barry Controls Corp.* (1996) 49 Cal.App.4th 1152, 1158, 1160 [57 Cal.Rptr.2d 200] [" 'A local court rule or practice which is inconsistent with a statute enacted by the Legislature is invalid[]' " and "trial judges have no authority to issue courtroom local rules which conflict with any statute"].)

Our holding that the SCMO is invalid, to the extent it precluded filing motions pursuant to section 437c, is consistent with the decisions reached by other appellate courts. (See *Lokeijak v. City of Irvine* (1998) 65 Cal.App.4th 341 [76 Cal.Rptr.2d 429] [blanket order issued by a particular department of the Orange County Superior Court, which established a procedure for hearing § 437c motions that was different than provided by that section, held

---

[8]Disapproved of on other grounds in *Kowis v. Howard* (1992) 3 Cal.4th 888 [12 Cal.Rptr.2d 728, 838 P.2d 250].

invalid]; *Mediterranean Construction Co. v. State Farm Fire & Casualty Co.* (1998) 66 Cal.App.4th 257 [77 Cal.Rptr.2d 781] [relying in part on *Lokeijak*, held that a judge of the Orange County Superior Court had committed reversible error by failing to permit oral argument on a motion for summary judgment]; *Kalivas v. Barry Controls Corp., supra,* 49 Cal.App. 4th 1152 [courtroom local rule that required, inter alia, counsel to meet and confer and then file a joint document setting forth all disputed and undisputed issues and facts, held invalid]; *Sentry Ins. Co. v. Superior Court* (1989) 207 Cal.App.3d 526 [255 Cal.Rptr. 13] [invalidating an individual superior court's refusal to hear a timely filed summary judgment motion]; *Wells Fargo Bank v. Superior Court* (1988) 206 Cal.App.3d 918, 922 [254 Cal.Rptr. 68] [court-wide procedure for handling extensive and complicated motions for summary judgment held invalid, the court holding that "Section 437c does not categorize summary judgment motions depending on their difficulty and assign different timing requirements to more difficult motions"].)

## CASE MANAGEMENT IN COMPLEX LITIGATION

There is no doubt why the court issued the SCMO. By its order, the court sought to manage a very complex piece of litigation by seeking to resolve choice of law issues before hearing the dispositive motions on their merit. Although we have concluded respondent court exceeded its jurisdiction by issuing an order that precluded a party from *filing* a motion pursuant to section 437c, it does not necessarily follow that the court was powerless to deal with the problems presented to it or that all aspects of the SCMO were improper. Before turning to a discussion of these issues, it is important to observe the following: (i) the SCMO is a case-specific order issued in an attempt to deal with multifaceted choice of law issues in a very complex case. It is not a blanket order of respondent court that purports to be applicable to every, or even any, other case pending in respondent court; (ii) none of the cases discussed in the preceding section of this opinion involved complex litigation. If they did, there was no discussion in those cases concerning the relationship between complex litigation and section 437c.[9]

The present case, by contrast, was designated as complex litigation by the trial court no later than April 17, 1998. Section 19, subdivision (a) of the Standards of Judicial Administration Recommended by the Judicial Council, which was in effect at the time of the proceedings in respondent court, provided that "In complex litigation, judicial management should begin early

---

[9]*Wells Fargo Bank v. Superior Court, supra,* 206 Cal.App.3d 918, involved a rule directed at dealing with "extensive" or "complicated" summary judgment motions. Nothing in the court's opinion suggested the case itself was complex litigation.

and be applied continuously and actively, based on knowledge of the circumstances of each case." " 'Complex litigation' means those cases that require specialized management to avoid placing unnecessary burdens on the court or the litigants. Complex litigation is not capable of precise definition but may involve, for example, multiple related cases, extensive pretrial activity, extended trial times, difficult or novel issues, and postjudgment judicial supervision, or may concern special categories such as class actions; however, no particular criterion is controlling and each situation must be examined separately." (*Id.*, former subd. (c).) "Time limits should be regularly used to expedite major phases of complex litigation. Time limits should be established early, *tailored to the circumstances of each case*, firmly and fairly maintained, and accompanied by other methods of sound judicial management." (*Id.*, former subd. (f), italics added.)

Amendments to the California Rules of Court, which became effective on January 1, 2000, and which superceded the Standards of Judicial Administration relating to the definition of complex litigation, reflect the same concern for the manner in which such cases are managed. California Rules of Court, rule 1800(a), provides "[a] 'complex case' is an action that requires exceptional judicial management to avoid placing unnecessary burdens on the court or the litigants and to expedite the case, keep costs reasonable, and promote effective decision making by the court, the parties, and counsel." Rule 1800(b) provides that "[i]n deciding whether an action is a complex case under subdivision (a), the court shall consider, among other things, whether the action is likely to involve: [¶] (1) Numerous pretrial motions raising difficult or novel legal issues that will be time-consuming to resolve; [¶] (2) Management of a large number of witnesses or a substantial amount of documentary evidence; [¶] (3) Management of a large number of separately represented parties; [¶] (4) Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court; or [¶] (5) Substantial postjudgment judicial supervision."

Government Code section 68607 provides that "[i]n accordance with this article and consistent with statute, judges shall have the responsibility to eliminate delay in the progress and ultimate resolution of litigation, to assume and maintain control over the pace of litigation, to actively manage the processing of litigation from commencement to disposition, and to compel attorneys and litigants to prepare and resolve all litigation without delay, from the filing of the first document invoking court jurisdiction to final disposition of the action."

California Standards of Judicial Administration section 19, former subdivision (c), Government Code section 68607 and the currently applicable

California Rules of Court all recognize that complex litigation presents problems not presented by other less complicated cases. "The complex litigation procedure is intended to facilitate pretrial resolution of evidentiary and other issues, and to minimize the time and expense of lengthy or multiple trials." (*Asbestos Claims Facility* v. *Berry & Berry, supra,* 219 Cal.App.3d at p. 14.)

As we have observed, section 437c required the court to permit a motion made pursuant to that section to be filed "at any time after 60 days have elapsed since the general appearance in the action or proceeding of each party against whom the motion is directed." The only requirement of section 437c relating to when a motion is required to be *heard* is contained in subdivision (a): ". . . The motion shall be heard no later than 30 days before the date of trial, unless the court for good cause orders otherwise." The question presented is this: Even though the trial court was required to permit the filing of a section 437c motion at any time (consistent with the section), could it defer the hearing of such motion in order to first decide the myriad of choice of law issues potentially involved in the case. We hold the court had such power.[10] Stated otherwise, while section 437c afforded petitioner a right to file a summary judgment motion, the right to have such motion heard immediately was "not an absolute right but [was] a right which, like all rights relating to procedural matters, is qualified by the existence of the power of the court to exercise a reasonable control over the exercise of such right." (*Hays v. Superior Court* (1940) 16 Cal.2d 260, 264 [105 P.2d 975].)

█  It is well recognized that "all courts have inherent supervisory or administrative powers which enable them to carry out their duties, and which exist apart from any statutory authority." (*Asbestos Claims Facility v. Berry & Berry, supra,* 219 Cal.App.3d at p. 19.) As the court in *Asbestos Claims Facility* observed: "The extent of the trial court's inherent managerial power

[10]It is important to point out that even if the trial court were to entertain the choice of law and substantive law issues in the same section 437c motion, the former would have to be resolved first. Stated otherwise, the court could not rule on the substantive law issues until it resolved which jurisdictions' law was to be applied. Accordingly, the procedure established by the court for hearing choice of law issues first was, for all practical purposes, the same as would be employed if choice of law and substantive law issues were heard at the same time. Moreover, we note that, except for the time requirements, certain aspects of the SCMO were the functional equivalent of, if not identical to, the procedures established by section 437c. For example, the "notice of intent" requirement, i.e., that the moving party identify the parties to the proposed motion, the specific order sought the causes of action implicated and the moving party's choice of law served virtually the identical purpose as does the notice requirement of section 437c. The requirement that the parties submit "[a] copy of the operative pleading with the implicated allegations and causes of action highlighted," while going beyond what section 437c requires, is consistent with the court's inherent power to manage a complex case. The same is true with respect to the other procedures established by the court in order to permit it to manage this most complex piece of litigation.

in complex civil litigation has not yet been delineated by this state's reviewing courts. However, federal courts have long recognized that active and effective judicial management of such litigation is crucial. One federal court has explained, '[m]anagerial power is not merely desirable. It is a critical necessity. . . . We face the hard necessity that, within proper limits, judges must be permitted to bring management power to bear upon massive and complex litigation to prevent it from monopolizing the services of the court to the exclusion of other litigants.' [Citation.]" (*Id.* at p. 20.) (See also § 187.)

We recognize that the *Asbestos Claims Facility* court, and other courts, have stated that the court's inherent power applies " ' "if the procedure is not specified by statute or by rules adopted by the Judicial Council." ' " (*Asbestos Claims Facility v. Berry & Berry, supra,* 219 Cal.App.3d at p. 19.) We have no quarrel with this statement. We believe our holding that, in the present case, respondent court had the inherent power to defer hearing section 437c motions until it decided the choice of law issues is not inconsistent with section 437c, and that that section does not require that a filed motion must be heard on the day set by the filing party. Stated otherwise, if it were to be concluded that section 437c prohibited the court from deferring hearing petitioner's filed motion, thereby depriving the court of the ability to manage this complex piece of litigation, a serious separation of powers issue would arise.[11]

*Hays v. Superior Court, supra,* 16 Cal.2d 260 is instructive with respect to the issue under discussion. In *Hays,* a statute granted a litigant the right to take a deposition at any time. Based on the facts presented to it, the trial court temporarily denied the plaintiff's right to take the deposition of the defendant. The Supreme court sustained the trial court, finding that, although the statute in question conferred the right to take the deposition, the right was not absolute but, rather, was "qualified by the existence of the power of the court to exercise a reasonable control over the exercise of such right." (*Id.* at p. 264.)

---

[11]See *Lorraine v. McComb* (1934) 220 Cal. 753, 756 [32 P.2d 960] "[a]ccordingly, repeated instances are to be found where the judicial department has submitted to the regulatory power of the legislative department. This is particularly true in matters of procedure. But there must come a point beyond which the judicial department must be allowed to operate unhampered by legislative restriction." Additionally, we again observe the power given to courts by Government Code section 68607 to manage complex cases. See also Code of Civil Procedure section 128, subdivision (a)(3) and article XI, section 1 of the California Constitution. We agree also with the observation of the court in *Lu v. Superior Court* (1997) 55 Cal.App.4th 1264, 1268-1269 [64 Cal.Rptr.2d 561] that "[c]ase management orders also permit trial judges to carry out their responsibilities under Government Code section 68607, subdivision (a), to '[a]ctively monitor, supervise and control the movement of all cases . . . .' "

In *Lorraine v. McComb, supra,* 220 Cal. 753, the Supreme Court had before it a statute which required the court to grant a continuance of a trial or hearing on any motion or demurrer when all attorneys of record agreed to the continuance. When the trial court refused to grant a continuance, even though all counsel had stipulated to it, a writ of mandate was sought nullifying the trial court's order. In denying the writ, the court stated: " 'One of the powers which has always been recognized as inherent in courts, which are protected in their existence, their powers and jurisdiction by constitutional provisions, has been the right to control its order of business and to so conduct the same that the rights of all suitors before them may be safeguarded. This power has been recognized as judicial in its nature, and as being a necessary appendage to a court organized to enforce rights and redress wrongs.' [¶] We cannot ascribe to the legislature the intent to make the action of the parties compulsory upon the court in each instance." (220 Cal. at pp. 756-757.)

*Cottle v. Superior Court* (1992) 3 Cal.App.4th 1367 [5 Cal.Rptr.2d 882] involved complex litigation in which the trial court, on its own motion, issued a final order excluding evidence by the plaintiffs. In upholding this order, the court stated: "Furthermore, courts have inherent equity, supervisory and administrative powers [citation] as well as inherent power to control litigation before them. [Citation.] *Inherent powers of the court are derived from the state Constitution and are not confined by or dependent on statute.* [Citation.]" (*Id.* at p. 1377, italics added.)

In *Rutherford v. Owens-Illinois, Inc.* (1997) 16 Cal.4th 953 [67 Cal.Rptr.2d 16, 941 P.2d 1203] the court summarized the law applicable to a trial court's inherent power to control litigation before it. The court stated: "It is also well established that courts have fundamental inherent equity, supervisory, and administrative powers, as well as inherent power to control litigation before them. [Citation.] 'In addition to their inherent equitable power derived from the historic power of equity courts, all courts have inherent supervisory or administrative powers which enable them to carry out their duties, and which exist apart from any statutory authority. [Citations.] "It is beyond dispute that 'Courts have inherent power . . . to adopt any suitable method of practice, both in ordinary actions and special proceedings, if the procedure is not specified by statute or by rules adopted by the Judicial Council.' [Citation.]" [Citation.] That inherent power entitles trial courts to exercise reasonable control over all proceeding connected with pending litigation . . . in order to insure the orderly administration of justice. [Citation.] "Courts are not powerless to formulate rules of procedures where justice demands it." [Citations.] The Legislature has also recognized the

authority of courts to manage their proceedings and to adopt suitable methods of practice. [Citations.]' " (16 Cal.4th at p. 967.)

In sum, we conclude the trial court exceeded its jurisdiction and contravened section 437c by issuing the SCMO, to the extent that order precluded any party from filing a motion pursuant to section 437c. We further conclude, however, that once any party files a section 437c motion, the court may adopt a procedure for hearing such motion that is not inconsistent with this opinion. Stated otherwise, we believe that section 437c should not be permitted to place the trial court in a "judicial straightjacket," thereby depriving the court of the ability to manage a very complex case in an effective and efficient manner.

We desire our decision to be clearly understood. We are not stating that the trial court may establish a procedure for deferred hearing of section 437c motions in every complex case. (Cf. *Sentry Ins. Co. v. Superior Court, supra,* 207 Cal.App.3d 526 [involving a noncomplex case].) Each case must be examined individually in order to determine the propriety of the case management order issued in that case. What we do state is that, given the facts present in this case, respondent court may, after permitting any party to file a motion pursuant to section 437c, establish an orderly procedure for hearing choice of law issues before addressing the motion on its merit.

A final comment is in order. Motions for summary judgment and summary adjudication filed in complex litigation, such as the present case, often impose enormous burdens on trial courts, in terms of the time and resources that are required to be expended in order to resolve the motions. Although the filing requirement of section 437c makes sense in the context of litigation that is not complex, the same requirement may not make sense when truly complex litigation is involved. We urge the Legislature to consider the matter and determine whether the procedures established by section 437c should be modified in a case involving complex litigation and, if so, in what manner.

## DISPOSITION

The petition for writ of mandate is granted. The Superior Court of the State of California for the County of Los Angeles is directed to set aside its *supplemental* case management order to the extent it precludes any party from filing a motion pursuant to section 437c. This is without prejudice

to the court fashioning an order that is not inconsistent with the views expressed in this opinion.

The alternative writ, issued on October 15, 1999, is discharged.

Each party to bear its own costs.

Klein, P. J., and Aldrich, J., concurred.