[Nos. B163040, B166103. Second Dist., Div. Four. Sept. 29, 2003.]

JOSE HERNANDEZ et al., Petitioners, v.
THE SUPERIOR COURT OF THE STATE OF CALIFORNIA, Respondent;
ACHESON INDUSTRIES, INC., et al. Real Parties in Interest.

COUNSEL

Raphael Metzger, Thomas Martin and Greg Coolidge for Petitioners.

No appearance for Respondent.

Poole & Shaffery, John Shaffery and Darren M. Ballas for Real·Parties in Interest Industrial Furnace & Refractory, Inc.

Walsworth, Franklin, Bevins & McCall, Deidre F. Cohen and Christian J. Ziegler for Real Parties in Interest KB Alloys, Inc., Pacific Abrasives Supply Company and Standard Abrasives, Inc.

George H. Ellis for Real Party in Interest Milwaukee Electric Tool Corporation.

Johnson, Cebula & Rygh, Mike Vo and John M. Rygh for Real Parties in Interest Carbide Saw & Tool Company and Spede Tool Manufacturing Company.

Radcliff, Dongell & Lawrence and Jason M. Booth for Real Party in Interest TST, Inc.

Parker, Milliken, Clark, O'Hara & Samuelian, Stephen T. Holzer and Darren Marcus Salvin for Real Parties in Interest Empire Castings Incorporated.

OPINION

**HASTINGS, J.—**

## BACKGROUND

Plaintiffs in a wrongful death action have filed two petitions for writs of mandate to review several discovery orders: an order granting a motion to compel discovery, entered on October 23, 2002, and an order requiring the disclosure of petitioners' medical experts and other matters, entered on March 27, 2003.

This action was filed in 2001 against approximately 80 defendants, many of whom have been dismissed from the action, but with more than 40 remaining at the time the two petitions were filed. The case was provisionally deemed complex, and assigned to Department 24 of the Los Angeles County Superior Court for all purposes.[1]

---

[1] See California Rules of Court, rule 1800.

Petitioners filed their first petition on November 22, 2002, and the second on April 4, 2003. We consolidated the two petitions, stayed the disputed discovery orders, and issued an order to show cause, with written returns to be filed no later than June 27, 2003. On June 27, 2003, real parties in interest KB Alloys, Inc., Pacific Abrasives Supply Company, and Standard Abrasives, Inc., filed a single joint return, admitting or denying the allegations of the second petition only.[2] The return filed by real party in interest Industrial Furnace & Refractory, Inc., includes a demurrer to the second petition, but no answer to the allegations of either petition. All factual allegations of the first petition are therefore deemed admitted.[3]

KB's return admits all the allegations of the second petition that relate to the relevant procedural history of the discovery dispute, but deny all argument and conclusions, which we shall disregard in our summary. Thus, for example, instead of summarizing petitioners' allegations with regard to the effect of the various documents described in the petition, we shall take our summary from those documents that have been reproduced in petitioners' appendices.

## DISCUSSION

### 1. *The First Petition: Privilege Dispute*

On January 25, 2002, all defendants jointly propounded their first set of special interrogatories on petitioners. After petitioners served their responses, several defendants brought a motion to compel further responses to the interrogatories.[4] On June 26, 2002, the trial court granted the motion and issued a written order setting forth certain findings and ordering further responses to the interrogatories, among other things.

On July 17, 2002, after petitioners provided further answers to the interrogatories, the trial court issued a case management order with regard to scheduling remaining discovery.[5] The court ordered that defendants be permitted to serve supplemental interrogatories and document requests "to be directed squarely to the issues, and to be responded to promptly and fully,

---

[2] We shall refer to these real parties in interest collectively as KB.

[3] See *Dulaney v. Municipal Court* (1974) 11 Cal.3d 77, 81, footnote 3 [112 Cal.Rptr. 777, 520 P.2d 1].

[4] At the same time, they sought to compel production of documents. That motion is not at issue here.

[5] See generally, *Volkswagen of America, Inc. v. Superior Court* (2001) 94 Cal.App.4th 695, 705–708 [114 Cal.Rptr.2d 541].

and without evasion." Further, the court ordered that privilege objections, "where applicable, are to be accompanied by privilege logs."[6]

On August 23, 2002, defendant Milwaukee Electric Tool Corporation filed a motion to compel further answers to the first set of special interrogatories, charging that petitioners had identified documents merely by referring to pleadings and discovery in general terms, and by invoking various privileges, without providing the factual bases for them. Petitioners opposed the motion, and it was set for hearing on October 23, 2002.

In the meantime, another defendant, P.W. Gillibrand, obtained an order granting its motion for further responses to two of the interrogatories. Gillibrand had complained, among other things, of petitioners' refusal to identify documents and basing the refusal upon an assertion of privilege, without providing any facts establishing grounds for assertion of the privilege. On October 3, 2002, the trial court granted Gillibrand's motion, found that petitioners had waived the attorney-client and work product privileges due to their failure to provide a "privilege log," and overruled any objection to the disputed interrogatories based upon privilege.

On October 22, 2002, the day before hearing on Milwaukee's motion to compel, petitioners' attorneys faxed to Milwaukee's attorney a document entitled, "Privilege Log . . . re Milwaukee's Special Interrogatories (Set 1) and Inspection Demands." The log describes 26 documents, states the date each was prepared and the privilege invoked for each, and provides a Bates-stamp page number.

At hearing on Milwaukee's motion to compel, the trial court found, among other things, that petitioners had inserted the nearly identical list of generally described categories of documents and a "boilerplate enumeration of objections," in response to nearly every request to identify documents, without tailoring them to each particular interrogatory. The court concluded that the boilerplate responses were given without much consideration to their relevance to each interrogatory or any particular defendant, and were the equivalent of a response such as, "see all documents obtained in discovery."

The motion was granted. The minutes summarize the ruling as follows: "The claim of privilege in response to request to identify documents, other than privilege for confidential marital communications, is not sustained and other privilege is deemed waived. [¶] Further responses are to be given as more fully stated on the record. The request for sanctions is denied."

---

[6] The court had described a "privilege log" in its earlier ruling with regard to the request for production of documents, as a one that identifies each document for which a privilege is claimed, with its author, date of preparation, all recipients, and the specific privilege claimed.

First, with regard to the order of October 23, 2002, petitioners contend that the trial court had no power to deem their attorney-client and work product privileges waived, due to their failure to serve a "privilege log" with their responses to interrogatories. ■ We issued an order to show cause and stayed the order, because interlocutory review by writ may be the only adequate remedy where a petition alleges that an order compelling discovery violates a privilege or the attorney work product rule. (See *Roberts v. Superior Court* (1973) 9 Cal.3d 330, 336 [107 Cal.Rptr. 309, 508 P.2d 309], disapproved on another point in *People v. Cromer* (2001) 24 Cal.4th 889, 901, fn. 3 [103 Cal.Rptr.2d 23, 15 P.3d 243] [privilege]; *BP Alaska Exploration, Inc. v. Superior Court* (1988) 199 Cal.App.3d 1240, 1249–1250 [245 Cal.Rptr. 682] [work product].)

Petitioners contend that under "black letter law," a "privilege log" is required only when a party objects to a demand for inspection of a document based upon a claim of privilege. Such "black letter law," petitioners contend, may be found in Code of Civil Procedure section 2031, dealing with inspection demands, but not in section 2030, which deals with interrogatories.[7] In fact, the expression, "privilege log," does not appear in section 2031 or anywhere else in the Code of Civil Procedure, whether in black letters or any other color. The expression is jargon, commonly used by courts and attorneys to express the requirements of subdivision (g)(3) of section 2031.[8] (See e.g., *Kaiser Foundation Hospitals v. Superior Court* (1998) 66 Cal.App.4th 1217, 1223 [78 Cal.Rptr.2d 543]; *Scottsdale Ins. Co. v. Superior Court* (1997) 59 Cal.App.4th 263, 269 [69 Cal.Rptr.2d 112].)

The purpose of a "privilege log" is to provide a specific factual description of documents in aid of substantiating a claim of privilege in connection with a request for document production. (See *Korea Data Systems Co. v. Superior Court* (1997) 51 Cal.App.4th 1513, 1516–1517 [59 Cal.Rptr.2d 925].) The purpose of providing a specific factual description of documents is to permit a judicial evaluation of the claim of privilege. (*Blue Ridge Ins. Co. v. Superior Court* (1988) 202 Cal.App.3d 339, 346 [248 Cal.Rptr. 346]; *Motown Record Corp. v. Superior Court* (1984) 155 Cal.App.3d 482, 492 [202 Cal.Rptr. 227].)

Petitioners contend that the trial court had no power to impose the same requirements upon a claim of privilege in response to interrogatories. Petitioners' argument appears to be that since section 2031 requires a "privilege

---

[7] All further statutory references are to the Code of Civil Procedure, unless otherwise stated.

[8] Subdivision (g)(3) of section 2031 requires a responding party who objects to the demand for inspection of a document based upon a claim of privilege, to "(A) identify with particularity [the] document . . . , and (B) set forth clearly the extent of, and the specific ground for, the objection . . . , the particular privilege . . . [and] [i]f an objection is based on a claim that the information sought is protected work product under Section 2018, that claim shall be expressly asserted."

log," but section 2030 does not, a "privilege log" is neither permitted nor required by statute when answering interrogatories, and the trial court's own rule of procedure must, therefore, be preempted pursuant to rule 981.1 of the California Rules of Court.[9] Further, petitioners contend, it conflicts with the court's own case management order, which requires a "privilege log" only for documents withheld from inspection under section 2031. We agree, in part.

Section 2030 provides in subdivision (f): "The party to whom interrogatories have been propounded shall respond in writing under oath separately to each interrogatory by (1) an answer containing the information sought to be discovered, (2) an exercise of the party's option to produce writings, or (3) an objection to the particular interrogatory." Subdivision (f)(3) provides: "If an objection is made to an interrogatory or to a part of an interrogatory, the specific ground for the objection shall be set forth clearly in the response. If an objection is based on a claim of privilege, the particular privilege invoked shall be clearly stated. If an objection is based on a claim that the information sought is protected work product under Section 2018, that claim shall be expressly asserted."

In short, a responding party may object to an interrogatory that seeks privileged *information* by clearly stating the objection and the particular privilege invoked. But the *existence* of a document containing privileged information is not privileged. (*Smith v. Superior Court* (1961) 189 Cal.App.2d 6, 12 [11 Cal.Rptr. 165]; see also, *Mitchell v. Superior Court* (1984) 37 Cal.3d 591, 601–602 [208 Cal.Rptr. 886, 691 P.2d 642].) Interrogatories may be used to discover the existence of documents in the other party's possession. (See e.g., *Fellows v. Superior Court* (1980) 108 Cal.App.3d 55, 59–60 [166 Cal.Rptr. 274].) If an interrogatory asks the responding party to identify a document, an adequate response must include a description of the document. (*Deyo v. Kilbourne* (1978) 84 Cal.App.3d 771, 783 [149 Cal.Rptr. 499].) Thus, we agree with petitioners that a "privilege log" is unnecessary with regard to answering interrogatories seeking the identification of documents. (See *Smith v. Superior Court, supra,* 189 Cal.App.2d at p. 12.)

Petitioners may have created confusion by including assertions of privilege in connection with responses to interrogatories merely requesting the existence of documents. When petitioners argued at hearing on the motion that section 2030 did not require a "privilege log," the court asked, "To the extent that the interrogatories ask you to identify documents and you are making a

---

[9] Rule 981.1 provides in relevant part: "The Judicial Council preempts local court rules relating to . . . discovery. . . . No trial court, or any division or branch of a trial court, shall enact or enforce any local rule concerning these fields. All local rules concerning these fields are null and void as of the effective date of this rule unless otherwise permitted or required by statute or Judicial Council rule."

claim of privilege in response to a request that you identify documents, how on Earth do I adjudicate that?" If petitioners were in fact asserting that identification of the documents was privileged, this is a legitimate question. Petitioners would have had to justify assertion of the privilege in response to the motion to compel further answers.

But if the problem merely related to an inadequate description of the documents, the court could have ordered further responses to the interrogatories without broaching the subject of privilege. The court's solution to the problem was to require what it termed a "privilege log," although it might simply have ordered petitioners to answer the interrogatories by identifying · the documents. (See *Deyo v. Kilbourne, supra,* 84 Cal.App.3d at p. 783.) Thus, the trial court erred, if at all, by using the incorrect jargon. Although it may have used the wrong linguistic shortcut, the court adequately explained its ruling in the oral proceedings. The court orally warned petitioners not to use a boilerplate response in order to identify documents, but to relate each document to the specific interrogatory requesting the identification. To be sure, the trial court did not use the words, "describe the documents," in its order, but petitioners needed no court order to know that to identify a document, they must give a description of it. (See *Deyo v. Kilbourne, supra,* 84 Cal.App.3d at p. 783.)

Petitioners also contend that the court erred in deeming privileges (other than marital privilege) waived, even though they served a so-called privilege log and filed it with the court the day before the hearing on the motion to compel. ■ We agree with petitioners that a forced waiver of the attorney-client privilege is not an appropriate sanction for a tardy "privilege log," so long as the privilege is invoked in a timely manner. (See *Korea Data Systems Co. v. Superior Court, supra,* 51 Cal.App.4th at p. 1517.)

Petitioners are entitled to relief by extraordinary writ if they can show that the court erred and that the trial court's order will injure them. (See *Davis v. Superior Court* (1992) 7 Cal.App.4th 1008, 1012 [9 Cal.Rptr.2d 331].) To the extent that the trial court ordered waiver of privileges because petitioners failed to provide a so-called privilege log in connection with the responses to interrogatories, it erred and the writ should be granted to set aside the order of waiver. But, as we have discussed, petitioners have no right to refuse to identify documents in response to interrogatories, even if they may properly refuse to produce them later, based upon a claim of privilege. (See *Smith v. Superior Court, supra,* 189 Cal.App.2d at p. 12.) Thus, to the extent the trial court ordered further responses to the interrogatories it acted within its authority and the order should not be set aside.

Petitioners' remaining contention with regard to the first petition is that the trial court abused its discretion by granting the motion with regard to all

defendants, even though just one defendant filed a motion, and none of the others formally joined in it. Petitioners contend that by not requiring a formal notice of joinder or a separate notice of motion from the other defendants, the trial court denied them a fair opportunity to litigate their case.

Petitioners fail to explain just how they will be denied a fair opportunity to litigate their case by having to respond to defendants' *joint* interrogatories. They complain that only one defendant filed a motion, but they do not contend that answering the entire set of joint interrogatories will damage their case, apart from having to supply information that they erroneously claim to be privileged.

The authorities upon which petitioners rely provide no clue to how they think their case might be damaged. They rely upon *Waicis v. Superior Court* (1990) 226 Cal.App.3d 283 [276 Cal.Rptr. 45], in which the Court of Appeal denied a petition for extraordinary relief, thus affirming the trial court's imposition of a sanction precluding of the testimony of a noncooperative deponent. (*Id.* at pp. 287–288.) Petitioners also rely upon *Lehman v. Superior Court* (1986) 179 Cal.App.3d 558 [224 Cal.Rptr. 572], in which the petitioners' motion to compel production of documents had been denied, depriving them of needed discovery. (*Id.* at pp. 564–565.) Thus, in each case, the petitioners had been *denied* evidence or discovery, not ordered to identify documents.

Here, the trial court found that formal joinder in the motion to compel was irrelevant "to the extent that this asks for information that is applicable to all the different defendants." Thus, the court believed that whether other defendants joined the motion or none joined the motion, petitioners' task was the same. And petitioners have not suggested that formal joinders or separate motions would have accomplished any more than adding duplicative weight to the court's file.

■ The trial court has broad discretion to fashion suitable methods of practice in order to manage complex litigation. (*Rutherford v. Owens-Illinois, Inc.* (1997) 16 Cal.4th 953, 967 [67 Cal.Rptr.2d 16, 941 P.2d 1203].) This includes requiring standard motions to minimize duplication where issues are similar, and the issuance of standard orders. (See *Volkswagen of America, Inc. v. Superior Court, supra,* 94 Cal.App.4th at pp. 705–706.) Individualized case management orders in complex cases are not preempted pursuant to California Rules of Court, rule 981.1, so long as they do not conflict with any statute or Judicial Council rule. (*Ibid.*) Petitioners have shown no conflict with any statute or Judicial Council rule, and we find no abuse of discretion.

## 2. The Second Petition: Disclosure of Experts

The second petition challenges the trial court's second case management order, entered upon motion of several defendants on March 27, 2003, requiring the unilateral early disclosure of petitioners' experts and their opinions, in order to establish a prima facie showing of exposure and causation.

The order declared that it was essential that petitioners make a prima facie showing of exposure and causation, in order to "narrow the roster of defendants." To that end, petitioners were ordered to serve a declaration on all defendants, separately setting forth with respect to each defendant, the name of each product, equipment, or substance that caused injury to the decedent, the nature of such injury, the date of exposure to the product or substance, the manner of exposure, all facts upon which petitioners intended to rely to establish that such exposure was a substantial factor in bringing about the injury, and the identity of each medical expert who would support petitioners' claims.

In addition, the court ordered petitioners to serve defendants with a declaration from one or more qualified experts with regard to each product or equipment identified in compliance with the first part of the order, stating to a reasonable degree of medical and scientific probability, whether the decedent's exposure to each specified product or equipment was a cause in fact and a substantial factor in the cause of the decedent's injuries and resulting death. Each declaration was to be accompanied by the expert's curriculum vitae.

The order stated that it was intended to provide the parties with enough information to determine whether motions for summary judgment were warranted. The court recognized that a *simultaneous* expert witness exchange was required by statute, but found that a nonsimultaneous exchange would "facilitate resolution of this case by allowing orderly presentation of CCP § 437c motions." (See §§ 2034, subd. (a)(1), 2019, subd. (a)(6).) The court also explained in a footnote that the newly-amended summary judgment statute required a longer period of service, making an earlier disclosure of experts necessary. (See § 437c, subd. (a) [75 days].)

Petitioners contend that the order exceeded the trial court's authority to formulate rules of procedure for the management of complex litigation. We agree.

" 'It is beyond dispute that "Courts have inherent power . . . to adopt any suitable method of practice, both in ordinary actions and special proceedings,

*if the procedure is not specified by statute or by rules adopted by the Judicial Council.*" [Citation.]' [Citation.]" (*Rutherford v. Owens-Illinois, Inc., supra,* 16 Cal.4th at p. 967, italics added.) The manner and time for the *mutual and simultaneous* exchange of expert witnesses is a procedure specified by statute, and set forth in some detail in section 2034.

The statute provides that within 10 days *after* the initial trial date is set, and no earlier than 70 days before that trial date, any party may demand a mutual exchange of information concerning the others' expert trial witnesses; the parties must then *both* provide a simultaneous designation of experts that must include or be accompanied by the witness's declaration. (§ 2034, subds. (a), (b).) "The specified date of exchange shall be 50 days before the initial trial date, or 20 days after service of the demand, whichever is closer to the trial date, unless the court, on motion and a showing of good cause, orders an earlier or later date of exchange." (§ 2034, subd. (c).)

▮ Thus, the statute provides for an earlier simultaneous, mutual exchange, but it does not permit a unilateral exchange. (See § 2034, subds. (c), (e); see also, § 2019, subd. (a)(6).) ▮ Trial courts may not adopt procedures that conflict with any statute. (*Rutherford v. Owens-Illinois, Inc., supra,* 16 Cal.4th at p. 967.)

We reject real parties' facile assertion that the order will not harm petitioners, because they simply need not use the same expert at trial. ▮ The opinions of experts who have not been designated as trial witnesses are protected by the attorney work product rule. (*Williamson v. Superior Court* (1978) 21 Cal.3d 829, 834–835 [148 Cal.Rptr. 39, 582 P.2d 126]; § 2018.) Their identity also remains privileged until they are designated as trial witnesses. (*Schreiber v. Estate of Kiser* (1999) 22 Cal.4th 31, 37 [91 Cal.Rptr.2d 293, 989 P.2d 720].) An expert's identity and opinions are discoverable prior to designation only so long as it has become reasonably certain that the expert will testify at trial (*County of Los Angeles v. Superior Court* (1990) 222 Cal.App.3d 647, 654 [271 Cal.Rptr. 698]), or if fairness requires it. (*Petterson v. Superior Court* (1974) 39 Cal.App.3d 267, 271 [114 Cal.Rptr. 20].)

▮ In general, fairness demands adherence to the statutory procedures, since they were designed to place the parties " 'on roughly equal footing.' " (*Kalaba v. Gray* (2002) 95 Cal.App.4th 1416, 1422 [116 Cal.Rptr.2d 570].) It is the party seeking disclosure who must demonstrate good cause for it, and the court's determination involves a balancing of the need for disclosure against the purposes served by the work product doctrine. (*National Steel Products Co. v. Superior Court* (1985) 164 Cal.App.3d 476, 490 [210 Cal.Rptr. 535].) Those purposes have been expressly stated by the Legislature

in section 2018, subdivision (a): "It is the policy of the state to: (1) preserve the rights of attorneys to prepare cases for trial with that degree of privacy necessary to encourage them to prepare their cases thoroughly and to investigate not only the favorable but the unfavorable aspects of those cases; and (2) to prevent attorneys from taking undue advantage of their adversary's industry and efforts."

In *County of Los Angeles v. Superior Court* (1990) 224 Cal.App.3d 1446 [274 Cal.Rptr. 712], this court quoted Professor James E. Hogan, who identified several reasons for strictly controlling pretrial discovery of expert opinions: " '[A]ccess to the conclusions of an adversary's experts often provides strong clues to the theories, thoughts, and tactics of opposing counsel, . . . a limitless right to ascertain and probe the views of opposing experts could easily lead to an expensive and delay-producing round of discovery that would tend to feed on itself . . . , [and] unrestricted discovery as to an adversary's experts enables "the stupid or lazy practitioners" to sit back secure in the knowledge that at the appropriate time they will be able "to 'ride free' on the opponent's industry." ' " (*Id.* at p. 1457, quoting 2 Hogan, Modern Cal. Discovery (4th ed. 1988) § 13.12, pp. 250–251.)

Good cause for disclosure might be a party's inability to prepare its claim or defense because he cannot obtain the information elsewhere (*National Steel Products Co. v. Superior Court, supra,* 164 Cal.App.3d at p. 491); or where the disclosure is needed by one who is not a party to the litigation and who will not release it to others. (*Kizer v. Sulnick* (1988) 202 Cal.App.3d 431, 441 [248 Cal.Rptr. 712].) In addition, where a party has submitted the opinion of the expert in opposition to a motion for summary judgment brought prior to designation, and there is a legitimate question regarding the foundation of the opinion, reasonable discovery may be allowed. (*St. Mary Medical Center v. Superior Court* (1996) 50 Cal.App.4th 1531, 1540 [58 Cal.Rptr.2d 182].)

More than 100 defendants were named in this action, and more than 60 have been dismissed, many by petitioners upon further investigation. We understand the trial court's desire to facilitate the dismissal of all defendants against whom there is insufficient evidence of liability, and to reduce the size, and therefore complexity, of the action as much as possible. We also understand that the trial court's power to manage complex litigation is not merely desirable; in some cases, it is a "critical necessity." (*First State Ins. Co. v. Superior Court* (2000) 79 Cal.App.4th 324, 334 [94 Cal.Rptr.2d 104].)

"[C]oncern about overbroad litigation is wholly understandable. The law cannot tolerate lawsuits by prospecting plaintiffs who sue multiple defendants on speculation that their products may have caused harm over time through

exposure to toxins in them, and who thereafter try to learn through discovery whether their speculation was well-founded." (*Bockrath v. Aldrich Chem. Co.* (1999) 21 Cal.4th 71, 81 [86 Cal.Rptr.2d 846, 980 P.2d 398].)

Further, facilitating summary judgment is a laudable goal in such cases. "The summary judgment procedure provides the court and parties with a vehicle to weed the judicial system of an unmeritorious case which otherwise would consume scarce judicial resources and burden the parties with the economic and emotional costs of protracted litigation because the lack of merit is not apparent from the face of the complaint or answer. [Citations.]" (*Juge v. County of Sacramento* (1993) 12 Cal.App.4th 59, 69–70 [15 Cal.Rptr.2d 598].)

Even before the recent amendment to section 437c, the trial court's task in managing complex litigation was made more difficult by the "unreasonably short" period within which to bring a motion for summary judgment after an expert witness exchange. (*St. Mary Medical Center v. Superior Court, supra,* 50 Cal.App.4th at p. 1538 [58 Cal.Rptr.2d 182].) Now, the time for service of motions for summary judgment is 75 days before hearing. (§ 437c, subd. (a); Stats. 2002, ch. 448, § 5.) With the time restrictions for the mutual exchange of experts, it may now be impossible to bring a motion for summary judgment after the exchange. (See § 2034, subds. (a), (b), and (c).) Even so, although the trial court may fashion procedures to mitigate the time problems in complex cases, it has no power to change the notice and filing periods of section 437c. (*First State Ins. Co. v. Superior Court, supra,* 79 Cal.App.4th at pp. 333–334.)[10] We conclude that the trial court also lacks power to mitigate the time constraints of section 437c by ordering a unilateral exchange of experts.

The court may, in the appropriate case, continue the hearing date of the motion for summary judgment. (*First State Ins. Co. v. Superior Court, supra,* at p. 334; § 437c, subd. (a).) The court may order the expert exchange to be made on an earlier date than that specified in the demand. (§ 2034, subd. (e)(2).) The Legislature has required, however, that the exchange be mutual and simultaneous. (See § 2034, subd. (a)(1); see also, § 2019, subd. (a)(6).)

Thus, the trial court's case management order of March 27, 2003, was in conflict with procedures specified by statute and established rules of law, insofar as it required the unilateral disclosure of the identity of each medical expert who would support petitioners' claims, the expert's curriculum vitae, and the expert's opinion with regard to causation. It was not, therefore,

---

[10] The appellate court in *First State Ins. Co. v. Superior Court, supra,* "urge[d] the Legislature to consider the matter and determine whether the procedures established by section 437c should be modified in a case involving complex litigation and, if so, in what manner." (79 Cal.App.4th at p. 336.)

a proper exercise of the trial court's power to manage complex litigation. (*Rutherford v. Owens-Illinois, Inc., supra,* 16 Cal.4th at p. 967.)

Real parties compare the case management order in this case with the order upheld in *Cottle v. Superior Court* (1992) 3 Cal.App.4th 1367 [5 Cal.Rptr.2d 882] (*Cottle*). In *Cottle,* approximately 175 owners and renters of various residential properties in an area once used by the oil industry as a dumping ground for hazardous wastes and other by-products brought an action for personal injuries, and the action was deemed complex. (*Id.* at p. 1371.) While the action was pending, the California Department of Health Services determined that the wastes did not pose any significant risks to public health or to the environment. (*Id.* at p. 1372.) Further, none of the plaintiffs who had been deposed had been examined by a physician to determine whether their physical complaints have any relation to exposure to chemical substances, and they had given evasive answers to discovery requests. (*Id.* at pp. 1381–1382.) The trial court entered a case management order requiring each plaintiff to file a statement establishing a prima facie claim, identifying the injury-causing chemical or toxic substance, the dates, manner, and place of exposure, the nature of each plaintiff's injuries, and the identity of each medical expert who would support the plaintiff's personal injury claim. (*Id.* at pp. 1381, 1383.)

The plaintiffs objected to a nonsimultaneous exchange of experts, but did not seek appellate review of the order. (*Cottle, supra,* 3 Cal.App.4th at pp. 1374, 1380, fn. 3.) The plaintiffs complied with the order by submitting a statement that the trial court found to be insufficient to establish a prima facie case, except with regard to emotional distress. (*Id.* at p. 1380.) On the eve of trial, therefore, after experts had been designated, the trial court entered an order excluding evidence of physical injury. (*Ibid.*)

Thus, the issue in *Cottle* was whether the trial court may, on the eve of trial, exclude evidence of physical injury in complex litigation, where the plaintiffs have admitted that they had not been diagnosed with any physical injury or ailment as a result of their exposure to toxic substances.[11] The question of whether a trial court may order an early, unilateral exchange of experts was not considered by the appellate court, and its opinion is therefore not authority on that issue. (See *Palmer v. GTE California, Inc.* (2003) 30 Cal.4th 1265, 1278 [135 Cal.Rptr.2d 654, 70 P.3d 1067].)

Nor did the *Cottle* court have before it an order requiring the plaintiffs to establish a prima facie case of causation before discovery was complete and

---

[11] The dissent in *Cottle* provided a well-reasoned argument against permitting such a procedure. (See *Cottle, supra,* 3 Cal.App.4th at pp. 1389–1406 (dis. opn. of Johnson, J.).)

before a trial date had been set. (*Cottle, supra,* 3 Cal.App.4th at p. 1385.) Indeed, the court pointed out that "it would have been unreasonable to expect petitioners to make such a connection prior to conducting discovery, but on the eve of trial, requiring such a showing is not unreasonable." (*Ibid.*) Thus, although *Cottle* provides no authority regarding a forced unilateral disclosure of experts, its dictum is instructive with regard to petitioners' contention that it was error to order them to make a prima facie showing of causation. We need not reach that contention, however, since the prima facie showing was to be made with the declarations of experts, and we have already held that part of the order to be invalid.

Petitioners' remaining obligations under the case management order of March 27, 2003, did not require them to make a prima facie showing of causation and exposure. The order set out a list of facts that petitioners were to provide under oath, including facts with regard to the decedent's injuries, the name of each substance or equipment to which he was exposed, the method, dates, and places of exposure, facts showing which injury was caused by each identified substance or equipment, and all facts upon which petitioners would rely to establish that each particular product or equipment was a "substantial factor" in bringing about the injuries.

As we have already discussed at length, trial courts have broad discretion to fashion suitable methods of practice in order to manage complex litigation, so long as the procedures adopted do not conflict with any statute, rule of law, or Judicial Council rule. (*Rutherford v. Owens-Illinois, Inc., supra,* 16 Cal.4th at p. 967.) A case management order is a useful tool in managing complex litigation. (*Lu v. Superior Court* (1997) 55 Cal.App.4th 1264, 1267 [64 Cal.Rptr.2d 561].) Among other advantages of such orders, discovery can be facilitated with detailed schedules and special form interrogatories or other orders requiring all parties to disclose certain information. (*Id.* at p. 1268.)

■ The purpose of pretrial discovery is to obtain all of the facts relative to a claim or defense. (*Deyo v. Kilbourne, supra,* 84 Cal.App.3d at p. 782.) A party responding to discovery requests may be required to state whether or not he or she makes a particular contention, and to disclose the evidentiary facts underlying each such contention, as well as each allegation of his complaint or affirmative defense. (*Burke v. Superior Court* (1969) 71 Cal.2d 276, 281 [78 Cal.Rptr. 481, 455 P.2d 409].) The list of facts petitioners were required to provide here was information of this kind, and the order will achieve in short order the discovery that petitioners would have to provide in any event, but will do so over a much longer period, thus appropriately serving the purpose of case management orders in complex litigation. (See *Lu v. Superior Court, supra,* 55 Cal.App.4th at p. 1268.)

Petitioners contend, however, that the case management order of March 27, 2003, went further than ordering the disclosure of facts. It states: "To the extent plaintiffs are unable to provide the information set forth above as to any defendant, or as to any of such defendant's product(s) and/or equipment, the Court expects that plaintiff will promptly dismiss the defendant or specify under oath which product(s) and/or equipment they are unable to proceed, in order to voluntarily narrow the issues presented. Plaintiffs' unexcused failure or inability to comply with these requirements, with respect to any one or more defendant(s), may constitute an evidentiary basis for motions under CCP § 437c, and/or may result in such preclusive, terminating or other sanctions as may be shown to be appropriate."

Petitioners interpret the order as requiring them to make a prima facie showing of exposure or causation or suffer dismissal of any defendant with regard to whom they cannot do so. They contend that such an order conflicts with the summary judgment statute by allowing a pretrial dismissal without compliance with the provisions of section 437c; and they point out that trial courts may not adopt procedures that conflict with the established statutory procedures set forth in section 437c. (*First State Ins. Co. v. Superior Court*, *supra*, 79 Cal.App.4th at pp. 333–334; see also, *Lokeijak v. City of Irvine* (1998) 65 Cal.App.4th 341, 344 [76 Cal.Rptr.2d 429]; *Kalivas v. Barry Controls Corp.* (1996) 49 Cal.App.4th 1152, 1159–1160 [57 Cal.Rptr.2d 200].)

If petitioners were still to be required to submit expert declarations sufficient to make a prima facie showing of causation, we might agree with their contention. Petitioners will have the burden at trial to prove the elements causation and exposure. (*Bockrath v. Aldrich Chem. Co., supra*, 21 Cal.4th at pp. 79–80.) Prior to trial, however, dismissal of any defendant due to an absence of evidence must be made upon motion initiated by that defendant, who will have the burden to produce evidence sufficient to make a prima facie showing that petitioners cannot prove either causation or exposure, or both. (See *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850 [107 Cal.Rptr.2d 841, 24 P.3d 493] (*Aguilar*).)

Petitioners have not shown, however, that once stripped of the requirement of expert declarations, the list accomplishes anything more than requiring them to provide information that would be discoverable in any event. So modified, the order does not relieve defendants of their burden to initiate a motion for summary judgment, but simply warns petitioners correctly that unless they provide complete factual responses to the listed items, their failure will be evidence that they do not possess, and cannot reasonably obtain, the evidence necessary to prove causation and exposure, and may justify summary judgment in the defendants' favor should a motion be filed.

(See *Aguilar, supra,* 25 Cal.4th at p. 855; *Chaknova v. Wilbur-Ellis Co.* (1999) 69 Cal.App.4th 962, 975–977 [81 Cal.Rptr.2d 871].)

### 3. *Request for Assignment to a New Judge*

Petitioners request that we order the action assigned to a new judge pursuant to Code of Civil Procedure section 170.1, subdivision (c), which provides: "At the request of a party or on its own motion an appellate court shall consider whether in the interests of justice it should direct that further proceedings be heard before a trial judge other than the judge whose judgment or order was reviewed by the appellate court."

The power of the appellate court to disqualify a judge under Code of Civil Procedure section 170.1, subdivision (c), should be exercised sparingly, and only if the interests of justice require it. (*Livingston v. Marie Callenders, Inc.* (1999) 72 Cal.App.4th 830, 840 [85 Cal.Rptr.2d 528].) The interests of justice require it, for example, where a reasonable person might doubt whether the trial judge was impartial (*Catchpole v. Brannon* (1995) 36 Cal.App.4th 237, 247 [42 Cal.Rptr.2d 440]), or where the court's rulings suggest the "whimsical disregard" of a statutory scheme. (*People v. Gulbrandsen* (1989) 209 Cal.App.3d 1547, 1562 [258 Cal.Rptr. 75].)

Petitioners contend that justice requires the assignment of a new judge, because they have been "forced" to file three petitions to overturn discovery orders requiring the disclosure of attorney work product. We observe that one such petition, in case No. B162999, was summarily denied. We partially grant and deny the two orders at issue in this opinion. The trial court's orders in connection with the interrogatories and the disclosure of experts and their opinions do not suggest bias or whimsy on behalf of the court, only frustration and a desire to manage a complex case. Thus, we deny petitioners' request.

### DISPOSITION

The order to show cause is discharged. Each petition is granted in part and denied in part and the matters are remanded to the trial court. The court is directed to vacate that portion of the order in connection with the interrogatories that finds waiver of privileges for failure to file a privilege log, case No. B163040. The court is directed to vacate the case management order of March 27, 2003, case No. B166103, only insofar as it requires the unilateral

disclosure of experts, their opinions, and their curricula vitae. With regard to disclosure of the facts enumerated in the order as items a through f, the petition is denied. Petitioners shall have their costs associated with each petition.

Epstein, Acting P. J., and Curry, J., concurred.

A petition for a rehearing was denied October 27, 2003, and on October 23, 2003, the opinion was modified to read a printed above.